**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THE LEAGUE OF RESIDENTIAL
NEIGHBORHOOD ADVOCATES, a
California non-profit corporation;
LARRY FAIGIN; THOMAS LARKIN;
EDWARD C. CAZIER; CYNTHIA
CHVATAL; J. LARSON JAENICKE;
ELIZA LEWIS; GARY J. HERMAN,
SR.; MARGARET KUHNS; MADELINE
WARREN,
              *Plaintiffs-Appellants,*

              v.

CITY OF LOS ANGELES;
CONGREGATION ETZ CHAIM; JAMES
HAHN, Mayor, City of Los
Angeles; ROCKY DELGADILLO, City
Attorney, City of Los Angeles,
              *Defendants-Appellees.*

No. 06-56211

D.C. No.
CV-03-04890-CAS

OPINION

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted
July 10, 2007—Pasadena, California

Filed August 21, 2007

Before: Barry G. Silverman, William A. Fletcher, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Silverman

10181

**COUNSEL**

Leslie M. Werlin, McGuire Woods, Los Angeles, California, for the plaintiffs-appellants.

Susan S. Azad, Latham & Watkins, Los Angeles, California, for defendant-appellee Congregation Etz Chaim.

Tayo A. Popoola, Los Angeles, California, for defendants-appellees City of Los Angeles, James K. Hahn, and Rocky Delgadillo.

---

**OPINION**

SILVERMAN, Circuit Judge:

An Orthodox Jewish congregation applied for a conditional use permit to operate a synagogue in an area zoned solely for residential use. Neighbors of the proposed synagogue objected and, ultimately, the City of Los Angeles denied the application. The Congregation then filed a federal lawsuit alleging that the denial of the permit violated its federal and state constitutional rights. All these claims were later dismissed. However, while the lawsuit was pending, Congress passed the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. Concerned about the force of this new federal law and seeking to avoid further litigation, the City entered into a settlement agreement that allowed the Congregation to operate the synagogue under certain conditions.

Neighbors of the synagogue brought the present action, alleging that the Settlement Agreement is void because, in settling the lawsuit as it did, the City effectively granted the Congregation a conditional use permit without providing notice and a hearing to the affected community. This, they say, violated state law and their right to due process.

We agree with the neighbors on their state law claim. To paraphrase Justice O'Connor in a different context, the pendency of litigation is not a blank check for a city when it comes to the rights of its residents. In the Settlement Agreement, the City granted a conditional use right without first giving affected persons notice and an opportunity to be heard,

thereby violating state law. A settlement agreement cannot override state law absent a specific determination that federal law has been or will be violated. Since no such findings were made here, the Settlement Agreement is invalid and unenforceable.

## I.   Background

Congregation Etz Chaim, an Orthodox Jewish congregation, acquired property on Highland Avenue in the Hancock Park neighborhood of Los Angeles. In light of the area's designation as an "R1" residential zone under Los Angeles Municipal Code § 12.08, the Congregation sought from the City a conditional use permit ("CUP") to allow for congregational religious worship and services on the property. In October 1996, the City's Zoning Administrator denied the application and the requested variances. This action was later upheld by the Board of Zoning Appeals and the Los Angeles City Council.

Then, in 1997, the Congregation brought a federal action under 42 U.S.C. § 1983, alleging that the City's denial of its CUP application violated state and federal law. In June 1998, while this federal action was pending, the Congregation petitioned for a writ of mandate in Los Angeles Superior Court, seeking to overturn the City's denial of the CUP. The Superior Court upheld the denial and the California Court of Appeal affirmed.

Shortly thereafter, the Congregation filed an amended complaint in the federal action to include an alleged violation of RLUIPA. RLUIPA's effective date was September 22, 2000. Pub. L. No. 106-274, 114 Stat. 803 (2000). Citing to the preclusive effect of the state court proceedings, the district court granted summary judgment to the City on all issues raised by the Congregation in its original complaint. However, the court denied the City's motion for summary judgment with respect to the newly added RLUIPA claim.

On September 27, 2001, the City and the Congregation set-tled. The City denied any violation of federal law on its part. However, the Settlement Agreement authorized the use of the Highland property for congregational worship, subject to sev-eral restrictions. It restricted the number of congregants and the number of cars at the property during services. Moreover, the Congregation could not hold weddings, funerals, ban-quets, fund-raising events, or offer day care services. Finally, the Congregation had to maintain the property's residential exterior and could not post signs, posters, or flyers on the premises.

Pursuant to the Agreement, the district court dismissed the Congregation's federal action with prejudice on February 1, 2002, with the court retaining jurisdiction over the subject matter and the parties for a period of five years.[1] The League of Residential Neighborhood Advocates and individual Han-cock Park homeowners (collectively, "the League"), none of whom were parties to the first federal court action, filed a complaint under 42 U.S.C. § 1983 against the City, Mayor James Hahn, City Attorney Rocky Delgadillo (collectively, "the City"), and the Congregation.[2] The League argued that local zoning ordinances denied the City authority to enter into such an agreement. It also asserted federal and state constitu-tional violations.

On December 22, 2003, the district court granted the Con-gregation's motion to dismiss with prejudice. The court found

---

[1]The City and the Congregation have since been involved in litigation over the scope and enforcement of the Settlement Agreement. *See Congre-gation Etz Chaim v. City of Los Angeles*, 371 F.3d 1122 (9th Cir. 2004). Additionally, while the district court initially agreed to retain jurisdiction over the Settlement Agreement and the parties for five years, on Septem-ber 6, 2006, the court entered a joint stipulation and order extending its jurisdiction until February 1, 2012.

[2]This action was originally assigned to the Honorable Harry L. Hupp. On February 2, 2004, it was reassigned to the Honorable Christina A. Sny-der following the death of Judge Hupp.

that the Settlement Agreement did not create a CUP, and that the privileges granted to the Congregation did not run with the land and were created by contract against a threat of litigation. Further, the court found, these privileges would be enforced through contractual, and not criminal, sanctions. Therefore, the court held, the City did not have to comply with the standards and procedures outlined in the local zoning ordinances for the granting of a CUP.

The district court later granted the City's motion for judgment on the pleadings with leave to amend, concluding that "the law of the case established by the December 22, 2003 order . . . bar[red] any claim predicated on the theory that the Settlement Agreement is a de facto CUP." The League thereafter amended its complaint against the City, which the district court dismissed with prejudice under Fed. R. Civ. P. 12(b)(6).

The League appealed. We remanded the case to the district court for reconsideration of its ruling in light of *Trancas Property Owners Ass'n v. City of Malibu*, 138 Cal. App. 4th 172 (2006). In *Trancas*, the California Court of Appeal invalidated a city's decision to settle a lawsuit by granting the functional equivalent of a zoning variance without complying with statutory zoning procedures. *Id*. at 181-82. Having previously held that the Settlement Agreement did not grant a de facto CUP, the district court found *Trancas* distinguishable and affirmed its earlier order.

## II.  Jurisdiction

The district court had subject matter jurisdiction over the League's constitutional claims under 28 U.S.C. §§ 1331, 1343(a), and over its state claims under 28 U.S.C. § 1367(a). Furthermore, the district court retained subject matter jurisdiction over the Settlement Agreement for the purpose of issuing any order construing, modifying, enforcing, terminating, or reinstating its terms. *See Flanagan v. Arnaiz*, 143 F.3d 540,

544-45 (9th Cir. 1998). We have jurisdiction pursuant to 28 U.S.C. § 1291.

## III.  Standard of Review

We review de novo the district court's dismissal of the League's claims under Fed. R. Civ. P. 12(b)(6). *See Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007). All facts alleged in the complaint are assumed true. *Id*.

## IV.  Discussion

A federal consent decree or settlement agreement cannot be a means for state officials to evade state law. *See Keith v. Volpe*, 118 F.3d 1386, 1393 (9th Cir. 1997) (holding that state officials "could not agree to terms which would exceed their authority and supplant state law"); *Perkins v. City of Chicago Heights*, 47 F.3d 212, 216 (7th Cir. 1995) (" 'Some rules of law are designed to limit the authority of public officeholders . . . . They may chafe at these restraints and seek to evade them,' but they may not do so by agreeing to do something state law forbids.") (internal citation and alteration omitted). In California, a duly enacted local ordinance has the same binding force as a state statute. *See, e.g.*, *Empire Fire & Marine Ins. Co. v. Bell*, 55 Cal. App. 4th 1410, 1419, 1422 (1997). We must therefore review the validity of the City's action under state law before examining any possible interaction with federal law.

### A.  The Settlement Agreement was not authorized by state law

[1] Los Angeles Municipal Code § 12.08(A) limits the use of buildings or structures in an R1 residential zone primarily to one- or two-family dwellings:

> A.   Use. No building, structure or land shall be used and no building or structure shall be erected, struc-

turally altered, enlarged or maintained except for the following uses . . . .

. . .

> 6. Conditional uses enumerated in *Sec. 12.24* when the location is approved pursuant to the provisions of said section.

Among the conditional uses requiring approval are the operation of "Churches/Houses of worship." Los Angeles Municipal Code § 12.24(T)(3)(b).

**[2]** The procedure for reviewing CUP applications requires an initial decision by the Zoning Administrator, public notice, and a public hearing. *Id.* § 12.24(C), (D). Furthermore, the decision-maker must issue a series of factual findings before granting a CUP. *Id*. § 12.24(E). Any aggrieved person may administratively appeal the decision of the Zoning Administrator to the Planning Commission and, if still unsatisfied, to the City Council. *Id*. § 12.24(I).

**[3]** Municipalities may not waive or consent to a violation of their zoning laws, which are enacted for the benefit of the public. *See Hansen Bros. Enters., Inc. v. Bd. of Supervisors*, 907 P.2d 1324, 1343 (Cal. 1996); *Trancas*, 138 Cal. App. 4th at 181-82; *see also* Cal. Civ. Code § 3513. Any such agreement to circumvent applicable zoning laws is invalid and unenforceable. *See Smith v. City of San Francisco*, 225 Cal. App. 3d 38, 55 (1990).

The League contends that the Settlement Agreement did just that; it granted use permission to the Congregation outside of the required statutory processes and, therefore, is void. The district court rejected this argument because it determined that the Settlement Agreement was not a CUP. It was created by agreement and its obligations did not run with the land. Enforcement would not be accomplished through criminal

law, but through contractual remedies. Therefore, because the Settlement Agreement was something less than a traditional CUP, the procedures and standards mandated by Los Angeles Municipal Code §§ 12.08, 12.24 were never triggered.

We disagree. The district court's analysis — a comparison between a traditional CUP and the terms of the Settlement Agreement — ignores the plain language of Los Angeles Municipal Code § 12.08: All "conditional use" is forbidden in an R1 zone unless "approved pursuant to the provisions of [Section 12.24]." The question is not whether the Congregation has been granted, in all respects, the de facto equivalent of a CUP. The question, rather, is whether, within the framework of the City's zoning ordinance, the Congregation could engage in the uses permitted by the Settlement Agreement without first obtaining a CUP. Therefore, we need only ask whether the Settlement Agreement grants the Congregation permission to engage in a "conditional use" as defined by the ordinance that is forbidden in the absence of a valid CUP. If so, the statutory framework is triggered in full.

**[4]** Here, the answer is evident. The Congregation sought, and the Settlement Agreement granted, permission to operate a synagogue on the Highland property. In an R1 zone, congregational worship is considered a "conditional use" under Section 12.24, and requires a permit. Before allowing such a use, the City was required to comply with the ordinance's procedural formalities. Because the City did not satisfy those formalities when it entered into the Settlement Agreement, the Agreement is invalid and unenforceable under state law.

The California Court of Appeal's recent decision in *Trancas* confirms our conclusion. There, the City disapproved a developer's tract maps and the developer filed suit. 138 Cal. App. 4th at 176-77. In order to settle the claims, the City approved, in a closed session, a written agreement to rescind the disapproval and exempt the developer from all present and

future zoning density restrictions that would otherwise block the development. *Id*. at 178-79.

The *Trancas* court invalidated the agreement on two grounds.

First, it held the provision exempting the developer from all future density restrictions to be unlawful. *Id*. at 181. " 'Land use regulations . . . involve the exercise of the state's police power, and it is settled that the government may not contract away its right to exercise the police power in the future.' " *Id*. (quoting *Avco Cmty. Developers, Inc. v. S. Coast Reg'l Comm'n*, 553 P.2d 546, 556 (Cal. 1976)).

Second, the court focused on another provision that exempted the developer from *existing* density limitations in the zoning code. *Id*. at 181 (summarizing provision as an "agreement that the development need not comply with density limitations different from the density set forth in the covenant"). The court held:

> This contractual exemption from an element of the city's zoning is indistinguishable from the one condemned by *Avco*. Moreover, it functionally resembles a variance. Such departures from standard zoning, however, by law require administrative proceedings, including public hearings, followed by findings for which the instant density exemption might not qualify. *Both the substantive qualifications and the procedural means for a variance discharge public interests. Circumvention of them by contract is impermissible*.

*Id*. at 182 (emphasis added and citations omitted).

Here, the Settlement Agreement violated both principles of *Trancas*. The City *did* bargain away its right to exercise its police power over the Highland property so long as the Con-

gregation is in existence. It is now contractually obligated to tolerate the conditional use approved in the Agreement and may not enforce Section 12.08 or any other zoning ordinance to the extent that they deviate from the Agreement's provisions.

Moreover, in doing so, the City impermissibly circumvented the procedural and substantive limitations contained in Los Angeles Municipal Code § 12.24. It granted the Congregation a right to use property in a residential neighborhood for congregational worship without going through the necessary procedures and issuing the requisite factual findings.

[5] Finally, we reject any argument that the City may circumvent its zoning procedures by referencing its general authority to settle litigation under § 273(c) of the city charter. Section 273(c) generally empowers the city council "to approve or reject settlement of litigation that does not involve only the payment or receipt of money." This provision does not purport to authorize contractual exemptions from zoning requirements. *Trancas* clearly holds that such exemptions are illegal, and § 273(c) cannot grant the City more authority than is permitted under California law. *See Elysian Heights Residents Assn., Inc. v. City of Los Angeles*, 182 Cal. App. 3d 21, 40 (1986) ("Local legislation in conflict with general law is void.") (citation and alteration omitted).

[6] We hold that Settlement Agreement is invalid and unenforceable as a matter of California law.

## B.   There was no judicial determination that federal law had been or would be violated

Our inquiry is not yet complete. The City might not have to comply with the procedural and substantive limitations set forth in its zoning ordinances if there has been a violation of federal law or if compliance will result in such a violation. *Cf. Perkins*, 47 F.3d at 216 ("Once a court has found a federal

constitutional or statutory violation, however, a state law cannot prevent a necessary remedy.").

The district court validated the Settlement Agreement by referencing RLUIPA, 42 U.S.C. § 2000cc: "[The Settlement Agreement] was negotiated against the background not only of City zoning law, but federal law which might or might not be held valid after long and expensive litigation." On this theory, the City had the right to settle the Congregation's claim rather than litigate over RLUIPA's uncertain legal landscape.

**[7]** This logic contains one critical flaw. By placing its imprimatur on the Settlement Agreement, the district court effectively authorized the City to disregard its local ordinances in the name of RLUIPA. Such judicial action is authorized only when the federal law in question mandates the remedy contained in the settlement. *See Keith*, 118 F.3d at 1393 ("Under the Constitution, the district court could not supersede California's law unless it conflicts with any federal law."). As summarized by the Seventh Circuit:

> [U]pon properly supported findings that such a remedy is *necessary* to rectify a *violation of federal law*, the district court can approve a consent decree which overrides state law provisions. Without such findings, however, parties can only agree to that which they have the power to do outside of litigation.

*Perkins*, 47 F.3d at 216; *see also Cleveland County Ass'n for Gov't by the People v. Cleveland County Bd. of Comm'rs*, 142 F.3d 468, 477 (D.C. Cir. 1998).

**[8]** Here, the district court held that a *potential* violation of federal law allowed a settlement agreement authorizing the City to disregard its zoning regulations. This was incorrect. Before approving any settlement agreement that authorizes a state or municipal entity to disregard its own statutes in the

name of federal law, a district court must find that there has been or will be an *actual* violation of that federal law.[3]

Such a finding could not have been made in this case. While a district court would not be bound by the parties' stipulation that a violation of federal law had occurred or would occur, the district court here was presented with a settlement agreement that specifically reiterated the City's denial of all of the allegations of the complaint, and disclaimed any "admission of liability . . . under any federal, state, or local law, including [RLUIPA]."

[9] Absent a finding that federal law was violated or would be violated, the district court could not approve a settlement agreement that authorized the City to disregard its own zoning ordinances. Since no such finding was made, the Settlement Agreement is invalid and unenforceable.[4]

## V.  Conclusion

We reverse the district court's dismissal of the League's collateral attack on the Settlement Agreement and we remand the case to the district court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

---

[3]Even if such a finding is made, a district court would then have to consider the appropriateness of the agreed-to remedy under federal law.

[4]In light of this holding, we decline to reach any of the League's constitutional claims.