# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2412

_____

| | | |
|---|---|---|
| St. Charles Tower, Inc., | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Robert Kurtz; Paul Phillips; | * | |
| David Geile; Lawrence J. Kettenbach; | * | Appeal from the United States |
| Mary Kettenbach, | * | District Court for the |
| | * | Eastern District of Missouri. |
| Appellants, | * | |
| | * | |
| County of Franklin, Missouri; | * | |
| Franklin County Board of Zoning | * | |
| Adjustment, | * | |
| | * | |
| Defendants. | * | |

_____

Submitted: January 14, 2011
Filed: June 28, 2011

_____

Before COLLOTON, GRUENDER, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

St. Charles Tower, Inc., filed suit against Franklin County, Missouri, and Franklin County's Board of Zoning Adjustment after they declined to issue St. Charles Tower a conditional use permit necessary to construct a proposed cell-phone

tower in Franklin County. St. Charles Tower alleged that the denial of the conditional use permit violated the Telecommunications Act of 1996. Before the case went to trial, the parties agreed to a consent judgment that required the issuance of the conditional use permit, as well as "any other permits necessary for [St. Charles Tower] to begin construction of its proposed facility." After the district court entered the consent judgment, Robert Kurtz, Paul Phillips, and David Geile, trustees of a homeowners' association that opposes construction of the tower ("Intervenors"), sought to intervene in the litigation in order to challenge the consent judgment on the grounds that it violated state law. The district court granted their motion to intervene but denied their motion to alter, amend, or vacate the consent judgment. The Interveners now appeal the district court's adverse ruling on their motion for relief from the consent judgment. For the reasons set forth below, we reverse.

## I.    BACKGROUND

In 2008, St. Charles Tower applied for a conditional use permit to build a cell-phone tower in Franklin County. The County's Planning and Zoning Commission denied the application, and St. Charles Tower appealed to the Board of Zoning Adjustment ("Board"). The Board denied the appeal in a written decision, offering only a single justification for its denial: "the proposed location of the tower would primarily serve areas outside of Franklin County, not providing an adequate amount of benefit to Franklin County residents."

St. Charles Tower filed suit against the Board and Franklin County, claiming, *inter alia*, that the Board's decision violated the Telecommunications Act of 1996 ("TCA"). Congress enacted the TCA in part to reduce impediments to the development of telecommunication facilities imposed by local governments. *USCOC of Greater Iowa, Inc. v. Zoning Bd. of Adjustment*, 465 F.3d 817, 820 (8th Cir. 2006). However, the TCA preserves "the authority of local zoning boards 'over decisions regarding the placement, construction, and modification of personal wireless service

facilities,'" *id.* (quoting 47 U.S.C. § 332(c)(7)(A)), so long as any decision of these local boards to deny a request to construct a personal wireless service facility is "in writing and supported by substantial evidence contained in a written record," § 332(c)(7)(B)(iii). The TCA authorizes any person adversely affected by a non-compliant local-government decision to challenge the decision in any court of competent jurisdiction. § 332(c)(7)(B)(v).

In its suit, St. Charles Tower alleged that the Board's denial of a conditional use permit was not supported by substantial evidence because the denial was not based on a permissible justification. Section 54 of Franklin County's Unified Land Use Regulations ("Land Use Regulations") provides that a completed application for a conditional use permit that otherwise complies with all applicable regulations can only be denied for one of four specified reasons. St. Charles Tower claimed that none of these reasons plausibly includes the Board's stated justification, that the proposed tower would "not provid[e] an adequate amount of benefit to Franklin County residents."

Nearly five months after the lawsuit was filed, Kurtz, Phillips, and Geile, trustees of the homeowners' association of the subdivision in which St. Charles Tower proposed to build the cell-phone tower, filed a motion for permissive intervention under Fed. R. Civ. P. 24(b). A day later, St. Charles Tower, the Board, and Franklin County filed a joint motion for consent judgment. On November 17, 2009, the district court denied Intervenors' motion to intervene because it was untimely and did not include a pleading "that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). In the same order, the district court granted the joint motion for consent judgment and entered the proposed consent judgment. The consent judgment stipulated to the entry of judgment in favor of St. Charles Tower on the TCA counts and also entered judgment in favor of St. Charles Tower on several of its prayers for relief, which resulted in the issuance of "[a]n expedited mandatory injunction or writ in the nature of mandamus compelling Franklin County to issue a

Conditional Use Permit, and any other permits necessary for [St. Charles Tower] to begin construction of its proposed facility."

Two days after judgment was entered, Intervenors filed a motion for intervention of right under Fed. R. Civ. P. 24(a) and for relief from the consent judgment.[1] The motion included a proposed complaint that alleged, *inter alia*, that the consent judgment impermissibly circumvented state procedural protections and accordingly violated the Due Process Clause. The district court found that the Intervenors had satisfied the requirements for intervention of right and granted the motion to intervene. It requested further briefing on the question of whether the consent judgment should be altered or set aside under Fed. R. Civ. P. 59(e) or 60(b). After further briefing, the district court denied the motion for relief from the consent judgment, holding that the consent judgment's remedy did not violate state law. The court further held that even if the consent judgment did violate state law, the Board's denial of the conditional use permit had violated the TCA and the consent judgment's remedy was necessary to correct this violation of federal law.

## II.     DISCUSSION

Intervenors appeal the district court's refusal to vacate the consent judgment pursuant to Fed. R. Civ. P. 60(b).[2] Rule 60(b) gives the district court authority to vacate a final judgment for reasons such as mistake, newly discovered evidence, fraud, or "any other reason that justifies relief." A district court's denial of a motion under Rule 60(b) is reviewed for abuse of discretion. *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 935 (8th Cir. 2006). "Abuse of discretion occurs if the

---

[1] Lawrence and Mary Kettenbach, owners of a local residence, subsequently requested and were granted leave to join in the motion to intervene.

[2] Although Franklin County and the Board are captioned as defendants, they have not participated in this appeal.

district court rests its conclusion on clearly erroneous factual findings or if its decision relies on erroneous legal conclusions." *MIF Realty L.P. v. Rochester Assocs.*, 92 F.3d 752, 755 (8th Cir. 1996) (quoting *Hosna v. Groose*, 80 F.3d 298, 303 (8th Cir. 1996)).

Intervenors argue that the consent judgment violates Missouri law because it compels the Board and Franklin County to issue a conditional use permit without following the procedures specified in the Land Use Regulations. Moreover, they argue that the relief granted by the consent judgment was not necessary to rectify the alleged violation of the TCA and that, consequently, the violation of state law cannot be excused on the ground that the state laws are overridden by federal law. Intervenors also contend that the district court should have automatically vacated the consent judgment when it granted them intervention of right. Finally, they argue that the consent judgment cannot stand because the district court mechanistically rubber stamped the proposed judgment even though it is not fair, reasonable, or adequate, and is manifestly unjust.

"While parties can settle their litigation with consent decrees, they cannot agree to 'disregard valid state laws.'" *Perkins v. City of Chicago Heights*, 47 F.3d 212, 216 (7th Cir. 1995) (quoting *People Who Care v. Rockford Bd. of Educ. Sch. Dist. No. 205*, 961 F.2d 1335, 1337 (7th Cir. 1992)); *see also League of Residential Neighborhood Advocates v. City of L.A.*, 498 F.3d 1052, 1056 (9th Cir. 2007) ("Municipalities may not waive or consent to a violation of their zoning laws, which are enacted for the benefit of the public."); *Cleveland Cnty. Ass'n for Gov't by the People v. Cleveland Cnty. Bd. of Comm'rs*, 142 F.3d 468, 478 (D.C. Cir. 1998) ("The Cleveland County Board of Commissioners is, like any other party, free to choose settlement of a suit over the threat of prolonged litigation. But like any other party, it may not do so in a manner that disregards applicable state law. The county's failure to abide by this principle . . . renders the consent decree invalid as a matter of law."). We agree with Intervenors that the consent judgment's remedy—compelling the

issuance of the conditional use permit without regard to the procedures specified in the Land Use Regulations—violated state law.

Section 32 of the Land Use Regulations provides that "[a]ll actions of the Board shall be taken by a concurring vote of four-fifths."[3] Moreover, Section 81 of the Land Use Regulations requires that "[a]ny decision made by [the Board] . . . regarding an . . . issuance or revocation of a conditional use permit shall be reduced to writing" and the written decision "shall state the board's findings and conclusions, as well as supporting reasons or facts, whenever these regulations require the same as a prerequisite to taking action." Appendix F, Section F-7(c) of the Land Use Regulations requires, as a prerequisite to issuance of a conditional use permit, that specific, written findings be made with respect to such issues as the propriety of the location and design of the proposed tower.[4]

St. Charles Tower does not contend that the Board voted by four-fifths, as required by Section 32, or made the written findings required by Section F-7(c) before entering into the consent judgment. And any attempt to comply with these requirements after the consent judgment issued is an empty formalism, since the consent judgment would require the issuance of the conditional use permit even if the Board subsequently voted unanimously to deny the permit and even if it made no

---

[3] Intervenors cite Section 87 rather than Section 32. Section 87 suggests that a four-fifth's vote is required to reverse or modify any decision on appeal to the Board from the Planning and Zoning Commission. We rely instead on Section 32 because it applies broadly to "[a]ll actions of the Board."

[4] Section F-7(c), by its terms, is addressed only to decisions of the Planning and Zoning Commission, not appeals from the Commission to the Board. However, we conclude that Section F-7(c)'s written finding requirement applies to the Board by operation of Section 81, which requires the Board, on appeal from the Commission, to make and reduce to writing whatever findings are required by the Land Use Regulations "as a prerequisite to taking action."

written findings.[5] Accordingly, because it compels the issuance of the conditional use permit without regard to the procedural requirements of the Land Use Regulations, the consent judgment violated state law. The Land Use Regulations were adopted pursuant to Mo. Rev. Stat. §§ 64.800-64.905, and in Missouri, "within [their proper] sphere of action, . . . ordinances have all the force of laws." *Kan. City Gunning Adver. Co. v. Kansas City*, 144 S.W. 1099, 1101 (Mo. banc 1912). Accordingly, Franklin County and the Board can no more disregard the procedural requirements specified in the Land Use Regulations than they could disregard any other valid state law. *See League of Residential Neighborhood Advocates*, 498 F.3d at 1056 ("Before [issuing a conditional use permit], the City was required to comply with the ordinance's procedural formalities. Because the City did not satisfy those formalities when it entered into the Settlement Agreement, the Agreement is invalid and unenforceable under state law.").

In defending the validity of the consent judgment, St. Charles Tower argues that neither Sections 32, 81, nor any other provision of the Land Use Regulations applies when the Board is defending in court its final decision on a conditional use permit. This argument fails to persuade. The Board and Franklin County have no authority besides that which is given to them by law. *See Falk v. Barry, Inc.*, 158 S.W.3d 327, 329 (Mo. Ct. App. 2005) ("An administrative tribunal is a creature of statute and exercises only that authority invested by legislative enactment." (quoting *Martin v. Inland Truck Parts*, 935 S.W.2d 68, 71 (Mo. Ct. App. 1996))); *Atwell v. Jack Henry & Assocs., Inc.*, 748 S.W.2d 929, 933 (Mo. Ct. App. 1988) ("[A] county

---

[5] The Board ultimately issued the conditional use permit in a November 20, 2009 decision of record. In a letter submitted pursuant to Fed. R. App. P. 28(j), St. Charles Tower asserts that this decision was unanimous. Even if true, this point is irrelevant because, as noted above, the consent judgment would compel the issuance of the permit regardless of the vote's outcome. Moreover, while the decision finds that none of the four specified reasons for denial in Section 54 applied, it makes no written findings as required by Section F-7(c). These written findings are required "[i]n addition to the determinations or limitations specified . . . by Section 54."

must have authority conferred by law in order for it to act, and has only such powers as the legislature sees fit to delegate."). St. Charles Tower has pointed to no Missouri statute or regulation that would authorize the Board or Franklin County to issue a conditional use permit outside of the procedures authorized by Mo. Rev. Stat. §§ 64.800-64.905 and the Land Use Regulations adopted by Franklin County pursuant to these state statutes. And the only process for issuing conditional use permits authorized by these provisions is governed by Sections 32 and 81 of the Land Use Regulations.[6]

Because it compels Franklin County and the Board to issue the conditional use permit without following the procedural requirements in Sections 32 and 81, the consent judgment impermissibly circumvented those requirements and therefore violated state law. State actors cannot enter into an agreement allowing them to act outside their legal authority, even if that agreement is styled as a "consent judgment" and approved by a court. "While parties can settle their litigation with consent decrees, they . . . cannot consent to do something together that they lack the power to do individually." *Perkins*, 47 F.3d at 216. *See also Keith v. Volpe*, 118 F.3d 1386, 1393 (9th Cir. 1997) ("[P]arties to the Consent Decree . . . [can]not agree to terms which would exceed their authority and supplant state law."). The Land Use Regulations, like the procedural requirements at issue before the Ninth Circuit in *League of Residential Neighborhood Advocates*, were "enacted for the benefit of the public," 498 F.3d at 1056, and while the County and the Board "may chafe at these restraints and seek to evade them, . . . they may not do so by agreeing to do something

---

[6] Nor could St. Charles Tower find shelter in Franklin County's general authority to settle lawsuits. *See League of Residential Neighborhood Advocates*, 498 F.3d at 1057 ("[W]e reject any argument that the City may circumvent its zoning procedures by referencing its general authority to settle litigation.").

state law forbids," *id.* at 1055 (internal quotation marks omitted) (quoting *Perkins*, 47 F.3d at 216).[7]

Finding that the consent judgment contravenes state law does not end our inquiry, however, for if the consent judgment's "remedy is *necessary* to rectify a *violation of federal law*, the district court can approve a consent decree which overrides state law provisions." *Perkins*, 47 F.3d at 216. "Once a court has found a federal constitutional or statutory violation, . . . a state law cannot prevent a necessary remedy. Under the Supremacy Clause, the federal remedy prevails." *Id.*; *see also Missouri v. Jenkins*, 495 U.S. 33, 57 (1990) ("To hold [that the state law prevails] would fail to take account of the obligations of local governments, under the Supremacy Clause, to fulfill the requirements that the Constitution imposes on them."). The district court concluded that even if the consent judgment violated state law, such a violation is not fatal to the consent judgment because "the granting of the permit was a necessary remedy to rectify the violation of the TCA."

Even assuming that the Board's refusal to issue St. Charles Tower a conditional use permit violated the TCA, "[the] district court would then have to consider the appropriateness of the agreed-to remedy under federal law." *League of Residential Neighborhood Advocates*, 498 F.3d at 1058 n.3. "Such judicial action [approving a consent judgment that violates state law] is authorized only when the federal law in question mandates the remedy contained in the settlement." *Id.* at 1058. Even then, "[r]emedies that override state law must be narrowly tailored so as to infringe state

---

[7] Intervenors argued before the district court that the consent judgment also violated state law by disregarding Section 76's requirement that the Board hold a public hearing before taking action on appeal. The district court found that the Board did not conduct such a hearing but concluded that because the Board initially held a hearing before denying the conditional use permit, no additional hearing was required before issuing the permit. Intervenors do not challenge this conclusion on appeal. Therefore, we do not decide whether the consent judgment also violated state law on this basis.

sovereignty as minimally as possible." *Perkins*, 47 F.3d at 217. Federal remedial powers "[can] be exercised only on the basis of a violation of the law and [can] extend no farther than required by the nature and the extent of that violation." *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 399 (1982); *cf. Jenkins*, 495 U.S. at 57 ("Even though a particular remedy may not be required in every case to vindicate constitutional guarantees, *where . . . it has been found that a particular remedy is required*, the State cannot hinder the process by preventing a local government from implementing that remedy." (emphasis added)).

The TCA itself prescribes no particular remedy. *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 497 (2d Cir. 1999). Intervenors suggest that an order compelling the issuance of the conditional use permit is not a necessary remedy for a TCA violation. *See Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals*, 297 F.3d 14, 24 (1st Cir. 2002) ("[W]e can conceive of circumstances in which a remand [to the Board] may be in order [to correct a TCA violation] . . . ."). St. Charles Tower responds that although remand might be an appropriate remedy for a violation of the TCA's "in writing" requirement, an order compelling the issuance of the permit is the proper remedy for the violation of the "substantial evidence" requirement at issue in this case, especially in light of the TCA's goal of expeditious judicial review. *See Cellular Tel. Co.*, 166 F.3d at 497. We need not settle this question, however, since the consent judgment at issue here goes far beyond compelling the issuance of a conditional use permit—the only permit alleged to have been illegally denied.

The consent judgment not only provides that "Franklin County shall issue the Conditional Use Permit to [St. Charles Tower]," but it also compels "Franklin County to issue . . . *any other permits necessary* for [St. Charles Tower] to begin construction of its proposed facility." (emphasis added). For example, in addition to the conditional use permit, the Land Use Regulations require St. Charles Tower to obtain a building permit prior to constructing the tower. *See* Appendix F, Section F-4(b) ("In addition to any other approvals required by this Section, no Antenna, Tower, or

support structure shall be erected prior to receipt of a Building Permit."). We fail to see how requiring the issuance of other permits, such as a building permit, is necessary to remedy the alleged TCA violation at issue here.

To be sure, we recently have held that compelling the issuance of a building permit is an available form of relief for an improper denial of a conditional use permit. In *USCOC of Greater Missouri v. County of Franklin*, we held that a suit by U.S. Cellular, arising out of Franklin County's denial of a conditional use permit, was not mooted by the County's subsequent issuance of that permit because "Franklin County has not issued the requisite building permit," the issuance of which was "necessarily encompassed and specifically addressed in U.S. Cellular's amended complaint." 636 F.3d 927, 931-32 (8th Cir. 2011). While *USCOC of Greater Missouri* perhaps stands for the proposition that federal courts have authority under the TCA to mandate the issuance of a building permit as an available form of relief for the improper denial of a conditional use permit, the court in *USCOC of Greater Missouri* was not faced with—and did not purport to decide—the distinct question whether this form of relief is *necessary* to correct a TCA violation involving the improper denial of a conditional use permit.[8] In the instant case, the district court found that the Board violated the TCA by refusing to issue a conditional use permit based on a written decision that was not supported by substantial evidence in the record. Compelling the issuance of other

---

[8] Because the decision in *USCOC of Greater Missouri* was issued after briefing and oral argument in this case, we requested the parties to file supplemental briefs addressing its impact. In its supplemental brief, St. Charles Tower cites not only *USCOC of Greater Missouri* but also *Ogden Fire Co. No. 1 v. Upper Chichester Twp.*, 504 F.3d 370 (3d Cir. 2007), and *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490 (2d Cir. 1999). These cases are distinguishable for the same reasons as *USCOC of Greater Missouri*.

permits, such as a building permit, simply is not a necessary remedy for this violation.[9]

Because the consent judgment's remedy is not "narrowly tailored so as to infringe state sovereignty as minimally as possible," *Perkins*, 47 F.3d at 217, its violation of state law cannot be excused on the ground that it "is *necessary* to rectify a *violation of federal law*," *id.* at 216, and the state-law violation renders the consent judgment invalid and unenforceable, *see League of Residential Neighborhood Advocates*, 498 F.3d at 1057-58.[10] Accordingly, we conclude that the district court

_____

[9] The dissent would remand to the district court for further findings concerning "whether requiring the issuance of the additional permits was a necessary remedy under the circumstances." *Post* at 17. To the extent the dissent suggests that in certain circumstances the issuance of additional permits could be a necessary remedy, we agree. For example, should Franklin County refuse to grant a building permit in a way that violates federal law, compelling the issuance of a building permit may be a necessary remedy for that violation. However, to the extent the dissent suggests that further findings by the district court could illuminate the question whether the issuance of additional permits is necessary to remedy the only violation alleged before the district court—the denial of a conditional use permit—it both misunderstands the nature of the necessity inquiry and reads too much into our opinion in *USCOC of Greater Missouri*. Something necessary is "inevitable," "unavoidable," or "compulsory." Merriam Webster's Collegiate Dictionary 828 (11th ed. 2005). When a consent judgment mandates a remedy that violates state law, the remedy can override contrary state law under the Supremacy Clause and thus allow the consent judgment to stand only if the remedy is compelled by federal law. *USCOC of Greater Missouri* does not hold that the issuance of other permits is compelled by federal law, and it is unclear to us how further findings by the district court could help resolve this issue.

[10] We cannot excise from the consent judgment the provision that compels the issuance of these other permits any more than we could modify on appeal a settlement agreement bargained for by the parties. *Cf. Thompson v. Edward D. Jones & Co.*, 992 F.2d 187, 190 n.5 (8th Cir. 1993) (refusing to disregard "an integral part of the settlement bargain" because "this Court cannot now modify the terms of that bargain"

erred in holding that the consent judgment did not violate state law and that any violation was justified as a necessary remedy for a violation of the TCA. Consequently, the district court abused its discretion in refusing to vacate the consent judgment pursuant to Fed. R. Civ. P. 60(b). *See MIF Realty L.P.*, 92 F.3d at 755 ("Abuse of discretion occurs if the district court rests its conclusion on . . . erroneous legal conclusions." (quoting *Hosna*, 80 F.3d at 303)).[11]

## III. CONCLUSION

For the forgoing reasons, we reverse the district court's denial of Intervenors' motion to vacate the consent judgment and remand to the district court for further proceedings.

SHEPHERD, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority that the consent judgment contravenes state law and is legal only if it was a necessary remedy for a TCA violation. The majority, however, does not decide whether there was a TCA violation or whether ordering the Board to issue a conditional use permit is a necessary remedy for the violation. Instead, the majority vacates the consent judgment based on the conclusion that ordering the issuance of all additional permits is not a necessary remedy. I am troubled that this approach gives no guidance to the district court and unnecessarily delays the litigation, against the goals of the TCA. On remand, the district court can presumably adopt its previous findings in relation to the TCA violation and the conditional use permit, and we will be forced to revisit in the future the issues we could have

---

at the insistence of one of the parties).

[11] We need not reach Intervenors' other challenges to the consent judgment, and we also deny as moot St. Charles Tower's motion to strike portions of Intervenors' Addendum.

-13-

addressed now. I would affirm the district court's findings that there was a TCA violation and that ordering the issuance of a conditional use permit was a necessary remedy under the circumstances.

I also dissent from the majority's conclusion that ordering the issuance of all additional permits is never a necessary remedy for the failure to approve a conditional use permit in violation of the TCA because I believe the conclusion is foreclosed by our rational in *USCOC of Greater Missouri*. Ultimately, I agree we must remand because the consent judgment orders the issuance of "any other permits," but I believe we must do so solely for the district court to determine whether requiring the issuance of these additional permits was a necessary remedy under the circumstances.

In *USCOC of Greater Missouri*, a different cellular company sued Franklin County also alleging that the Board's denial of its conditional use permit constituted a TCA violation. *USCOC of Greater Missouri*, 636 F.3d at 928. The district court found a TCA violation, and on remand, the Board granted U.S. Cellular the conditional use permit. *Id.* at 928-29. Despite the Board's approval, U.S. Cellular was still unable to build its cellular tower because Franklin County refused to sign the conditional use permit and issue the required building permits. *Id.* at 929. The district court, however, dismissed U.S. Cellular's claims as moot, reasoning that they were directed solely at the Board's denial of the conditional use permit, a decision which had been reversed. *Id.* We disagreed and held that U.S. Cellular's claim remained viable because Franklin County continued to refuse to issue the requisite building permits for U.S. Cellular to begin construction of its tower. *Id.* at 930-31.

Critical to the holding in *USCOC of Greater Missouri* was our conclusion that limiting the district court to compelling only the issuance of the conditional use permit would undermine the congressional policy behind the TCA. The TCA is designed to balance facilitating the construction of wireless telecommunication towers with maintaining substantial local control over the siting of towers. *Id.* at 930 (quoting

*Omnipoint Commc'ns, Inc. v. City of White Plains*, 430 F.3d 529, 531 (2d Cir. 2005)). We recognized in *USCOC of Greater Missouri* that the balance is tipped and the purpose of the TCA subverted when telecommunication providers are at the mercy of local regulators. *Id.* at 931-32. As happened to U.S. Cellular, when federal courts do not have the power to mandate the issuance of all building permits contemplated by the federal claim, local regulators can avoid and delay construction of cellular towers by denying approval at subsequent administrative steps. *Id.* at 932. Accordingly, we concluded that "issuance of the requisite building permits . . . arises under the TCA," *id.*, and assumed on remand that the district court would issue the needed permits to U.S. Cellular, *id.* at 933.

Based on this policy-driven approach in *USCOC of Greater Missouri*, there must be at least the possibility that ordering the issuance of all permits could be a necessary remedy here. As in *USCOC of Greater Missouri*, if requiring the issuance of all other building permits is never a necessary remedy when the denial of a conditional use permit violates the TCA, the Board could issue the conditional use permit, but Franklin County could still delay and prevent the construction of St. Charles Tower's cellular tower by denying other required building permits. Although the two cases are procedurally distinguishable—*USCOC of Greater Missouri* addressed whether the failure to issue other permits is redressable under the TCA whereas this case addresses whether requiring the issuance of other permits can be a necessary remedy under the TCA—*USCOC of Greater Missouri*'s reasoning is not limited to a specific procedural stage. It does not make sense that district courts would have the authority to order the issuance of all permits when the denial of a conditional use permit violates the TCA but cannot actually do so because ordering the issuance of all permits is never a necessary remedy for such a TCA violation. Moreover, in *USCOC of Greater Missouri*, we specifically contemplated that on remand the district court would order the issuance of all permits necessary "to complete the project at issue." *Id.* Accordingly, I conclude that an order requiring the

issuance of all permits could be a necessary remedy for the failure to issue a conditional use permit in violation of the TCA.

Perhaps most troubling is the lack of direction the majority's opinion gives to the district court. In *USCOC of Greater Missouri*, we reversed the district court's conclusion that it did not have authority to issue all necessary building permits, whereas in the instant case, we reverse the district court's order requiring the issuance of all necessary building permits. The cases cannot be distinguished on the facts because in both, a cellular company asked for the issuance of all necessary building permits as a remedy for the Board's denial of its conditional use permit in violation of the TCA. I am not sure what the district court must do in the future to avoid reversal, with the practical effect being prolonged litigation in contravention of the TCA's goal of speedy resolutions.

Ultimately, however, I agree with the majority that the portion of the consent judgment compelling Franklin County to issue "any other permits necessary" requires remand to the district court. The district court analyzed the consent judgment exclusively in terms of whether the issuance of the conditional use permit was a necessary remedy for the TCA violation. Because the district court was also obliged to make findings as to whether the issuance of other permits was a necessary remedy, I agree the district court abused its discretion by approving the consent judgment without discussing the need for these additional permits.[12]

Accordingly, I would affirm the district court's conclusions that there was a TCA violation and that ordering issuance of the conditional use permit was a necessary remedy, and I would remand to the district court solely for a determination

---

[12] Although I think the lack of findings requires remand, I do not fault the district court for not making them. The district court considered whether the consent agreement was a necessary remedy in the context of deciding the Intervenor's motion for reconsideration. The Intervenors, however, limited their argument to whether the conditional use permit was a necessary remedy.

-16-

of whether requiring the issuance of the additional permits was a necessary remedy under the circumstances.

_____