NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 26, 2021[*]
Decided July 27, 2021

**Before**

MICHAEL S. KANNE, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-3214

| | |
|---|---|
| MARCELLOUS L. WALKER, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 18-C-612 |
| SANDRA MCARDLE and MAXIM PHYSICIAN RESOURCES, *Defendants-Appellees.* | William C. Griesbach, *Judge.* |

**O R D E R**

Marcellous Walker began hallucinating and attempted suicide after a nurse practitioner at his prison prescribed him anti-nausea medication. He sued her, asserting that she violated his constitutional rights and state law by prescribing the medication without informing him of potential side effects and drug interactions. The district court dismissed several claims at screening and entered summary judgment against Walker on his constitutional claim, then relinquished supplemental jurisdiction over the state-

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

law claims that remained. Walker appeals, challenging those rulings and the denial of his earlier requests for recruited counsel and a neutral expert. We affirm in nearly all respects, but we vacate the decision to dismiss the medical malpractice claims on the merits at screening and remand for the entry of a modified judgment.

## I. Factual Background

Walker, an inmate at the Wisconsin Secure Program Facility (WSPF), suffers from insomnia and depression. Where the events are disputed, we present them in the light most favorable to him. *Thomas v. Martija*, 991 F.3d 763, 767 (7th Cir. 2021). In mid-2017, Walker received a prescription for mirtazipine, an anti-depressant, on an "as needed" basis to help him sleep. The drug affects the levels of serotonin in a patient's system. Later that year, Walker was placed on suicide watch after guards found a noose in his cell. He could not keep any food down and told a provider in the psychological services unit that he was dizzy, nauseous, and wanted to die.

On January 10, 2018, Walker saw Sandra McArdle, a nurse practitioner in the health-services unit, at the psychiatric provider's request. He repeated his complaints of hopelessness and nausea, adding that he believed the nausea was psychological. McArdle examined him and diagnosed a possible stomach virus. She prescribed ondansetron, an anti-nausea medication which also affects serotonin levels. In Walker's medical chart, McArdle wrote that she "educated" Walker about ondansetron. According to Walker, however, McArdle did not warn him of possible side effects, discuss alternative treatments, or ask what other medications he was taking.

Some days later, Walker was transferred to another prison for a few weeks because of overcrowding. A psychiatrist there reviewed Walker's prescriptions and stated that mirtazipine was a "poor choice" for treating insomnia, but he made no changes. At the new prison, Walker began using his mirtazapine prescription regularly because of worsening insomnia. He also began hallucinating: He saw ants crawling all over his body, for instance, and visions of Jesus telling him to "come to him"—which Walker believed meant he should kill himself. He did not tell staff about these visions.

After his return to WSPF in mid-February, Walker continued hallucinating. During a medication pass, he obtained a package insert for ondansetron, which warned of a "rare" possibility that the drug could cause serotonin syndrome (a potentially fatal condition with symptoms that can include hallucinations), but he was not concerned by what he read. On February 19, he attempted suicide by hanging after he saw another vision of Jesus. Guards cut him down, and he was rushed to a hospital, where he was

stabilized. A physician discharged him that same day with no changes to his medication but ordered follow-up with a prison psychiatrist.

McArdle visited Walker the next day and, for the first time, he told her that he began hallucinating after taking ondansetron. McArdle told him she would follow the hospital's instructions and referred him to a psychiatric nurse practitioner without taking any other action. The next day, Walker received treatment from the psychiatric nurse practitioner. Later, a psychiatrist later told him that he would have ordered monitoring for a patient taking mirtazapine and ondansetron simultaneously. Though the ondansetron prescription was not immediately discontinued, Walker stopped taking the drug at the nurse practitioner's suggestion, and his hallucinations subsided.

## II. Procedural History

Walker then filed this lawsuit under 42 U.S.C. § 1983 and Wisconsin tort law. In his complaint, he alleged that McArdle ignored his reports that his nausea was psychological; prescribed ondansetron without warning him of its risks or monitoring him afterward; and, after learning of his suicide attempt, did not immediately discontinue his prescription and referred him to another provider instead of treating him herself. Had he known of the risks associated with ondansetron, he continued, he never would have taken it. (He also sued several prison guards over their response to his suicide attempt. Some of those claims were dismissed; others have resolved. Those claims are not part of this appeal.)

A magistrate judge screened the complaint, 28 U.S.C. § 1915A, and recognized a deliberate-indifference claim based on McArdle's alleged failure to warn Walker of risks associated with ondansetron. Those same facts stated claims under Wisconsin law for medical malpractice and failure to obtain informed consent. But Walker's remaining allegations reflected only disagreement with McArdle's professional judgment. Over Walker's objections that he had stated additional claims, the district judge adopted the magistrate judge's recommendation and denied a later motion for reconsideration.

Walker sought leave to amend his complaint to add a new claim that McArdle violated his due-process rights by prescribing ondansetron without his informed consent. He also added a claim against McArdle's employer, Maxim Physician Resources, under a state-law theory of supervisor liability. Further, he asked the court to recruit counsel for him and to appoint a neutral expert. *See* FED. R. EVID. 706(a). He was not capable of gathering and interpreting medical evidence on his own, he said, and the court would benefit from the opinion of a pharmacologist.

The district court rejected Walker's attempt to add the due-process claim. There was already a state-law claim for informed consent, and the court would "not allow [him] to expand his claims by attaching an additional constitutional label." The court also denied Walker's requests for counsel and an expert. Walker was an experienced litigant, it reasoned, and displayed a good understanding of the legal issues. The medical issues in his case were "fairly straightforward" and did not outweigh Walker's ability to engage in discovery. And the court had no need for an expert at that point.

Walker encountered difficulty gathering evidence. He again asked the court to recruit counsel, explaining that he was having trouble getting prison officials to provide materials he believed were relevant. He also renewed his contentions that both he and the court would benefit from an expert who better understood his medical condition.

After holding a hearing on Walker's motions, the court took the request for recruited counsel under advisement. But it still saw no need for a neutral expert. When McArdle and Maxim moved for summary judgment, Walker submitted a third request for counsel and a neutral expert. The district court denied the motions. Given Walker's skills and abilities, it explained, he was capable of responding to the summary judgment motion on his own and could request extensions as needed.

Walker submitted a timely response to the summary judgment motion, which the district court later granted. It concluded Walker had no evidence that McArdle's failure to warn him when prescribing ondansetron about the risk of serotonin syndrome—which there was no evidence that Walker actually developed—departed radically from accepted medical practice. Further, no evidence quantified the risk of developing that condition or other any other adverse effects, and Walker was not regularly taking mirtazipine at the time of the ondansetron prescription, so he could not show that McArdle recklessly ignored any "excessive" risk of harm.

After resolving the constitutional claim, the court relinquished supplemental jurisdiction over the limited malpractice and respondeat superior claims it had allowed to proceed. Few judicial resources had been expended on them, and nothing suggested the statute of limitations had run. Having settled his claims against the prison-guard defendants short of trial, Walker now appeals the entry of summary judgment for McArdle and Maxim and numerous interlocutory rulings.

### III. Analysis

We begin with Walker's challenges to the denials of his motions for counsel and a neutral expert, which we review for abuse of discretion. *See Pruitt v. Mote,* 503 F.3d 647, 649, 658 (7th Cir. 2007) (en banc) (recruited counsel); *Ledford v. Sullivan,* 105 F.3d 354, 358 (7th Cir. 1997) (neutral expert). The district court's eventual decision to recruit counsel (for the claims against other defendants bound for trial before settling) came too late, Walker says—he needed an attorney, and the court needed the assistance of an expert, for purposes of the medical defendants' summary judgment motion.

But the district court acted within its discretion. Each time Walker requested counsel, the district court acknowledged the medical nature of Walker's claims and appropriately weighed their complexity against his abilities to litigate them. Based on his litigation experience, "superior" writing skills, and the "fairly straightforward" nature of the claims, the court permissibly determined that Walker was capable of engaging in discovery about them. Then, after holding a hearing and deferring a ruling on Walker's second request for counsel, the court carefully considered his arguments and determined that he was able to respond to a summary judgment motion on his own. *Walker v. Price,* 900 F.3d 933, 938–39 (7th Cir. 2018) (courts should be mindful of increasing complexities in advanced-stage litigation).

Further, we see no reason to disturb the district court's conclusion that a neutral expert was unnecessary. The appointment of neutral experts is rare. *See In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651, 665 (7th Cir. 2002) (commenting on infrequency of practice); *see also Monolithic Power Systems, Inc. v. O2 Micro Int'l Ltd.,* 558 F.3d 1341, 1348 (Fed. Cir. 2009) (observing that "Rule 706 should be invoked only in rare and compelling circumstances"). Walker lost the summary judgment motion because he lacked the required evidence that McArdle knowingly disregarded a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Petties v. Carter,* 836 F.3d 722, 730 (7th Cir. 2016) (en banc). An expert could not have opined on her state of mind in treating Walker. *See Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014); *Ledford,* 105 F.3d at 359. Therefore, the court's decision not to consult an expert did not prejudice Walker.

For similar reasons, we conclude that Walker fails to identify a material factual dispute precluding summary judgment on his constitutional claims. We review that ruling de novo. *Perry v. Sims,* 990 F.3d 505, 511 (7th Cir. 2021). As Walker urges, we assume that combining mirtazapine and ondansetron elevates the risk of serotonin syndrome and that McArdle knew of his "as needed" mirtazipine prescription. And,

given his account that his hallucinations subsided after he stopped taking ondansetron, we will infer some link between the drug and his symptoms. Still, we see no evidence that McCardle deliberately disregarded an excessive risk of harm. The package insert for ondansetron that Walker submitted (which the district court acknowledged but declined to take judicial notice of) does not quantify the risks associated with the drug and states that serotonin syndrome is "rare." Even if the failure to provide Walker with more information could be negligent (we express no opinion), nothing permits an inference that she acted with "something approaching a total unconcern for [Walker's] welfare in the face of serious risks." *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012) (internal citations omitted). Further, decisions by other medical providers—such as the prison psychiatrist and hospital staff who knew that Walker took ondansetron and made no changes—defeat the inference that McArdle's treatment was so outrageous as to be a constitutional violation. *Cf. Gil v. Reed*, 381 F.3d 649, 660–61 (7th Cir. 2004).

We turn next to Walker's contentions that his complaints stated more claims than the district court allowed to proceed past screening. First, we find no error in the dismissal of Walker's additional theories under the Eighth Amendment. His assertions that McArdle ignored his theory about the cause of his nausea and should have monitored him after prescribing ondansetron fall short of suggesting that McArdle knowingly disregarded a substantial risk of harm. *See Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752–53 (7th Cir. 2021) (allegations that doctor improperly administered appropriate medication insufficient to state claim); *cf. Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011) (refusal to administer available medication stated claim). And nothing suggests that McArdle's decision to refer him to a psychiatric provider—consistent with the hospital's discharge instructions—after his suicide attempt was "blatantly inappropriate." *Cf. Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (internal citations omitted). Prisoners are not entitled to dictate their own treatment. *Arnett*, 658 F.3d at 754. True, delays in treatment can lead to constitutional liability, but no facts suggest that the one-day delay here resulted in the kind of harm, such as the exacerbation of a medical condition, that we have found actionable under the Eighth Amendment. *See id. at* 753 (collecting cases).

These same allegations fare differently under state law, however. A claim for malpractice in Wisconsin is simply one that a medical care provider's actions fell below the requisite standard of care. *See, e.g., McEvoy by Finn v. Grp. Health Co-Op of Eau Claire*, 570 N.W. 2d 397, 406 (Wis. 1997). A plaintiff need only allege "(1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages, i.e., a negligent act or omission that causes an injury." *Estate of Hegarty ex rel. Hegarty v. Beauchaine*,

727 N.W. 2d 857, 900 (Wis. Ct. App. 2006). The district court was too hasty to say that, as a matter of law, Walker could not show that it was negligent for McArdle not to monitor him after prescribing the medication or discontinue it as soon as she learned of his hallucinations. And because Walker might still seek relief in state court (we do not opine on whether he should), we vacate the dismissal of these claims on the merits so that it will not have preclusive effect and remand for the entry of a modified judgment.

As for his other federal constitutional theory, Walker is correct that, since he initiated this lawsuit, we have joined other circuits in recognizing a due-process right for prisoners to receive certain medical information. But in discussing the contours of that right, we explained that it was "far from absolute." *Knight v. Grossman*, 942 F.3d 336, 342 (7th Cir. 2019) (internal citations omitted). To establish a claim, a prisoner must show (among other things) that a defendant "acted with deliberate indifference to the prisoner's right to refuse treatment." *Id.* at 344. We must assume Walker is sincere in his assertion that he would have refused ondansetron if he knew of its possible side effects. But nothing in his complaint—or his later evidence—suggests that McArdle was indifferent to his right to provide informed consent. *Id.* at 343; *see also Pabon v. Wright*, 459 F.3d 241, 250 (2d Cir. 2006). And we are inclined to agree with other circuits that "[i]nadvertent failures to impart medical information cannot form the basis of constitutional violation." *Pabon*, 459 F.3d at 250.

Finally, we affirm the relinquishment of supplemental jurisdiction over the state-law claims that made it past screening. Walker does not contest that we have no other source of jurisdiction over those claims. We reverse such a decision "only in extraordinary circumstances." *RWJ Management Co., Inc. v. BP Products North America*, 672 F.3d 476, 480 (7th Cir. 2012) (internal citations omitted). Indeed, we presume that a district court will relinquish jurisdiction over supplemental state-law claims when no federal claims remain in advance of a trial. *Id.* at 479. Walker insists that he overcomes the presumption because, contrary to the district court's statement, the three-year statute of limitations on malpractice claims has run. WIS. STAT. § 893.55(1m). But the limitations period on claims brought in non-Wisconsin forums is tolled from "commencement of the action … until the time of its final disposition in that forum." *Id.* § 893.15(3); *cf. Culbert v. Ciresi*, 667 N.W. 2d 825, 828–29 (Wis. Ct. App. 2003) (tolling inapplicable to claims *voluntarily* dismissed in federal court). It was therefore proper to dismiss without prejudice the medical-negligence claim that had survived screening.

For the reasons stated above, we VACATE the dismissal at screening of Walker's medical negligence claims and REMAND for entry of a modified judgment reflecting that no state-law claims were decided on the merits. In all other respects, we AFFIRM.