Anna G. CULBERT, Plaintiff-Appellant,†

VALLEY HEALTH PLAN, by its recovery agent, Meridan Resource Company, Intervening Plaintiff,

ABC INSURANCE COMPANY, Subrogated-Plaintiff,

v.

Dr. David CIRESI, Luther Hospital, Midelfort Clinic, Dr. Richard Cochrane and Eau Claire Anesthesiologists, Defendants-Respondents.

Court of Appeals

*No. 02–3320. Submitted on briefs May 5, 2003.—*
*Decided June 17, 2003.*

2003 WI App 158

(Also reported in 667 N.W.2d 825.)

† Petition to review denied 10-27-03.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Mark L. Krueger* of *Greenhalgh & Krueger, S.C.* of Baraboo.

On behalf of the defendants-respondents, Dr. David Ciresi, Luther Hospital, and Midelfort Clinic, the cause was submitted on the brief of *Donald K. Schott* of *Quarles & Brady, LLP* of Madison.

On behalf of the defendants-respondents, Dr. Richard Cochrane and Eau Claire Anesthesiologists, the cause was submitted on the brief of *Barrett J. Corneille* of *Corneille Law Group, LLC* of Madison.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J.   Anna Culbert appeals an order dismissing her medical malpractice claim because the statute of limitations had expired. She argues:   (1) the statute of limitations was tolled by her original federal action, and (2) equitable estoppel bars the defendants from raising the statute of limitations as a defense. We disagree and affirm the order.

## BACKGROUND

¶ 2.   On September 22, 1998, Culbert underwent surgery to her right leg at Luther Hospital in Eau Claire. Dr. David Ciresi and Dr. Richard Cochrane participated in an artery bypass of her right leg. An injury to Culbert's spinal cord, caused by a blood clot, was discovered on September 24 and Culbert underwent emergency surgery that same day. As a result of the spinal cord injury, Culbert lost the use of her right leg and is now confined to a wheelchair.

¶ 3.   Culbert's medical records are headed "Mayo Health System." Culbert filed a medical malpractice action on April 6, 2000, against the Mayo Foundation in the federal district court in Minnesota. The body of the complaint alleged negligence by Dr. Ciresi, Dr. Cochrane, and the "physicians and nurses of Luther Hospital . . . ."

¶ 4.   Mayo filed a motion to dismiss and provided an affidavit stating that it did not employ Ciresi and Cochrane and had no responsibility for the day-to-day operations of Luther Hospital. Culbert therefore voluntarily dismissed her action on June 26, 2000.

¶ 5.   Culbert's attorney began preparing a new complaint to be filed in Wisconsin. The defendants were Dr. Ciresi and Luther Hospital, and Dr. Cochrane and

Eau Claire Anesthesiologists. Before filing, the attorney for Dr. Ciresi and Luther Hospital contacted Culbert's attorney. Ciresi and Luther's attorney asked that all correspondence and pleadings for the new state action be served upon her instead of serving Ciresi and the hospital directly. Culbert's attorney sent a copy of the as yet unfiled complaint and attached a cover letter stating, "If you are not willing to accept service on behalf of Luther Hospital and Dr. Ciresi please advise me immediately." Ciresi and Luther's attorney wrote back stating, "This letter will confirm that I accepted service of the Complaint . . . ."

¶ 6. The summons and complaint were filed on September 1, 2000. On September 6, 2000, unauthenticated copies of the summons and complaint were served on Dr. Cochrane and Eau Claire Anesthesiologists. All the defendants filed answers alleging as affirmative defenses that there was insufficient service and that the court lacked personal jurisdiction.

¶ 7. In February 2002, the defendants moved for dismissal or summary judgment on the grounds of defective service because, among other things, they were never served with authenticated copies of the summons and complaint. Culbert acknowledged the error, and the trial court dismissed the action without prejudice on May 28, 2002.

¶ 8. Culbert filed the present action on March 13, 2002, alleging the same facts as in the federal action and the first Wisconsin action. The defendants moved to dismiss, arguing the statute of limitations had run. Culbert first argued that the federal action tolled the statute of limitations from the date she filed the federal complaint, April 6, 2000, until the time for appeal passed on July 26, 2000. Thus, she argued the statute of limitations was tolled for 111 days, plus an additional

123 days for a mandatory mediation period. *See* Wis. Stat. § 893.54.[1] The three-year statute of limitations on Culbert's claim would have expired on September 24, 2001. The present action was filed on March 13, 2002. If the statute of limitations tolled as Culbert argues, it would not have expired until May 14, 2002.[2]

¶ 9.   Alternatively, Culbert argued that because the defendants accepted service of the unauthenticated summons and complaint and engaged in months of discovery, they should be estopped from asserting the statute of limitations as a defense.[3] The court granted the defendants' motion to dismiss with prejudice. Culbert appeals.

## DISCUSSION

### I. Tolling of the Statute of Limitations

■

¶ 10.   Culbert argues that the federal action tolled the statute of limitations. This involves the interpretation and application of Wisconsin's tolling statutes,

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] Culbert also argues that (1) the federal action tolled the statute against the defendants even though they were not named in the federal action, and (2) the statute of limitations was tolled even though she failed to file a request for mediation. However, our determination that the federal action was a nullity is dispositive and we need not address these issues.

[3] Midelfort Clinic makes a separate argument that the statute of limitations has run as to it because it was not named as a party in either previous action or in the previous mediation request. Because we conclude the statute of limitations has run for all defendants, we need not address this argument.

which is a question of law we review independently. *State v. Murdock*, 2000 WI App 170, ¶ 18, 238 Wis. 2d 301, 617 N.W.2d 175.

■

¶ 11.  WISCONSIN STAT. § 893.15 provides:

(2) In a non-Wisconsin forum, the time of commencement or final disposition of an action is determined by the local law of the forum.

(3) A Wisconsin law limiting the time for commencement of an action on a Wisconsin cause of action is tolled from the period of commencement of the action in a non-Wisconsin forum until the time of its final disposition in that forum.

Therefore, we must look to the law of the federal court to determine when the Minnesota case was commenced.

■

¶ 12.  FEDERAL RULE OF CIVIL PROCEDURE 3 states that a civil action is commenced by filing a complaint with the court. Culbert urges us to stop our analysis here and conclude that because she filed the federal action on April 6, 2000, the statute of limitation tolled from that time until it was dismissed, and the appeal time expired on July 26, 2000, plus an additional 123 days for the mandatory mediation period. *See* WIS. STAT. § 893.54. Therefore, the statute of limitations would not have expired until May 14, 2002. Because the present action was filed on March 13, 2002, Culbert claims she was within the statute of limitations.

¶ 13.  However, Culbert's federal action was voluntarily dismissed. In federal courts, a voluntary dismissal means an action is a nullity. FED. R. CIV. P. 41(a)(1); *see also Robinson v. Willow Glen Acad.*, 895 Fed.2d 1168 (7th Cir. 1990). In *Robinson*, the court held

that a voluntarily dismissed federal action does not toll the Wisconsin statute of limitations. *Id.* at 1169. This is because a voluntarily dismissed federal action is a nullity, having no effect on a statute of limitations. *Id.*

¶ 14. Culbert claims *Johnson v. County of Crawford*, 195 Wis. 2d 374, 536 N.W.2d 167 (Ct. App. 1995), not *Robinson*, governs this case. In *Johnson*, we stated, "We see nothing . . . that exempts certain causes of action [from tolling] because the first action to enforce that cause of action was voluntarily dismissed." *Id.* at 381. However, in *Johnson*, the original action was filed in state court. *Id.* at 378. Here, the original action was filed in federal court. Thus, *Johnson* does not apply to Culbert's federal action.

¶ 15. Culbert further argues that, while federal law determines when the action was commenced, we should use Wisconsin law to determine the effect of voluntary dismissal on the tolling of the statute. However, FED. R. CIV. P. 41(a)(1) states that an action that is voluntarily dismissed in federal court is not commenced. We cannot simply ignore the federal rule, as Culbert urges us to do. It is integral to determining when the federal action was commenced, which is what WIS. STAT. § 893.15(2) directs us to examine. Consequently, because Culbert's federal action was never commenced under federal law, the statute of limitations was not tolled.

## II. Estoppel

¶ 16. Alternatively, Culbert argues that the defendants' actions in the first Wisconsin case should estop them from raising the statute of limitations as a defense in the second Wisconsin case. Whether to apply estoppel to preclude a party from raising a defense is within the

trial court's discretion. *Gonzalez v. Teskey*, 160 Wis. 2d 1, 13, 465 N.W.2d 525 (Ct. App. 1990). We affirm the trial court's discretionary determinations if it applied the correct law to the record and, through a logical process, reached a result a reasonable judge could reach. *Rodak v. Rodak*, 150 Wis. 2d 624, 631, 442 N.W.2d 489 (Ct. App. 1989).

¶ 17.  A trial court is to consider six factors in deciding whether to apply equitable estoppel. One of these is:  "The doctrine may be applied to preclude a defendant who has been guilty of fraudulent or inequitable conduct from asserting the statute of limitations[.]" *Hester v. Williams*, 117 Wis. 2d 634, 644–45, 345 N.W.2d 426 (1984). In applying these factors, the trial court in the present case determined the "defendants here did not lie in the weeds, waiting until the last moment to strike, and are not responsible for the jurisdictional defects associated with this action and the earlier case." Further, the court noted the "Catch-22" situation the defendants were in. This "Catch-22" was that the defendants' attorneys needed to conduct discovery until the statute of limitations ran in the event Culbert corrected the procedural error. However, they could not alert Culbert to her noncompliance with the Wisconsin statutes because they could have been accused of not zealously representing their clients' best interests. Consequently, the court found that equitable estoppel did not apply.

¶ 18.  Culbert relies primarily on *Ocasio v. Froedtert Mem'l Luth. Hosp.*, 2002 WI 89, ¶¶ 22, 24, 254 Wis. 2d 367, 646 N.W.2d 381, where our supreme court stated that a defendant may not engage in "game playing" or "lie in the weeds until the statute of limita-

tions [runs]." Culbert maintains that this is what the defendants did in this case.

¶ 19.   Culbert points to the communications between her attorney and Ciresi and Luther's attorney that took place before the first Wisconsin case was filed. Culbert claims that Ciresi and Luther's attorney solicited service and led Culbert's attorney to believe the service was valid. Additionally, Culbert argues that engaging in seventeen months of discovery amounted to lying in the weeds, waiting for the statute of limitations to run. Applying these circumstances to the factors from *Hester*, Culbert argues the defendants' conduct was inequitable and that she relied on the conduct to her detriment.

¶ 20.   We reject Culbert's attempt to compare this case with the circumstances in *Ocasio*. To begin with, Culbert had adequate notice that there were procedural defects. Each defendant raised the affirmative defenses of insufficient process and lack of personal jurisdiction in their answers to the complaint. As a result, Culbert knew the defendants were claiming a procedural defect, yet she never attempted to determine what that defect was. While the defendants were required to plead their affirmative defenses, they were not required to do more. A defendant need not alert and spell out a defect in a case, especially when the defect is dispositive. In fact, to do so would conflict with the defense attorney's duty to zealously represent the client. *Hester*, 117 Wis. 2d at 643–44. This is the "Catch-22" situation that the trial court referred to in its written order.

¶ 21.   Culbert argues that the defendants' "key defenses were buried in lists of 'boilerplate.' " The legal significance of this argument is unclear. Nevertheless, we observe that although each provider's answer contained a number of defenses, the ones relevant here

198

were by no means "buried." The defenses regarding service of process and jurisdiction were each among the first defenses listed in a section clearly labeled "Affirmative Defenses." Even a cursory reading should have alerted Culbert to the issues.

■

¶ 22.  Additionally, accepting service of a defective complaint does not waive the right to challenge procedural defects. *Falkner v. Guild*, 10 Wis. 563, 575 (1860). Consequently, Culbert could not rely on the communication from Ciresi and Luther's attorney to cure defective service. Further, we note that any action by Ciresi and Luther's attorney, even if it did amount to estoppel, would not bind the other defendants, Cochrane and Eau Claire Anesthesiologists.

¶ 23.  Finally, the fact that the defendants engaged in discovery until the statute of limitations ran does not estop them from using the statute of limitations as a defense. Moving forward with discovery is not equivalent to representation that a party is not going to pursue the defenses it asserted in its answer. *Lord v. Hubbell, Inc.*, 210 Wis. 2d 150, 161, 563 N.W.2d 913 (Ct. App. 1997).

¶ 24.  The first thing that must be shown under the *Hester* factors is that the defendants are guilty of fraudulent or inequitable conduct. *Id.* at 644–45. The record shows, and the trial court reasonably concluded, that the defendants did not engage in any fraudulent or inequitable conduct. Thus, the trial court correctly determined that estoppel does not apply.

*By the Court.*—Order affirmed.