COURT OF APPEALS
DECISION
DATED AND FILED

October 15, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1309**

STATE OF WISCONSIN

Cir. Ct. No. 2021CV123

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN EX REL. MICHAEL S. BAHRKE, PETER ORLIK
REVOCABLE TRUST U/A/D JUNE 5, 2012, ARTIE ORLIK FAMILY
TRUST CREATED UNDER THE LAST WILL AND TESTAMENT OF ARTIE
ORLIK DATED APRIL 24, 2000, ERIK A. PETERSON, PRISCILLA J.
PETERSON, JAMES E. MARONEK AND HEATHER PASSOW,

   PETITIONERS-RESPONDENTS,

 V.

DOOR COUNTY BOARD OF ADJUSTMENT AND DOOR COUNTY,

   RESPONDENTS-APPELLANTS.

APPEAL from an order of the circuit court for Door County: MARK J. McGINNIS, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Pursuant to a settlement agreement in a federal lawsuit, Door County (the County) and the Door County Board of Adjustment (BOA)[1] issued a conditional use permit (CUP) to Camp Zion, Inc., to construct a new building on its property and also determined that a setback variance was not required for the camp's proposed building plan. On certiorari review, the circuit court concluded that the County lacked authority to issue the CUP without following proper administrative procedures. The County now appeals the court's reversal of the issuance of the CUP. For the reasons that follow, we affirm the court's decision.

## BACKGROUND

¶2 This case began when the BOA denied Camp Zion's petition for a variance "to construct a new building for the purpose of dining, meeting, recreation, education and other activities located on the [p]roperty" Camp Zion owns in Door County, Wisconsin (hereinafter, the dining hall project).[2] Camp Zion had filed a combined application for a CUP as well as a variance for the dining hall project under the Door County Comprehensive Zoning Ordinance (the zoning ordinance). The petitioners-respondents in this case are neighboring landowners (the Neighbors) who oppose the dining hall project. The BOA considered the variance application first. At least one of the Neighbors objected to the project, and the BOA ultimately denied the variance.

---

[1] For ease of reading, we will refer collectively to the County and the BOA as "the County," unless we are referring to the BOA's actions individually.

[2] Camp Zion is a not-for-profit religious organization that operates a Christian camp for youth and adults on its Door County property.

¶3      Thereafter, Camp Zion filed a federal lawsuit in the Eastern District of Wisconsin, challenging the BOA's decision based on the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq. (RLUIPA), other federal and state statutes, and constitutional provisions (hereinafter, the Camp Zion lawsuit).   Among other things, Camp Zion sought an injunction requiring the County to grant the variance and allow construction of the dining hall project.

¶4      The County sought to resolve the Camp Zion lawsuit by entering into a settlement agreement.  On September 30, 2021, the Door County Resource Planning Committee (the committee) met in closed session to discuss the proposed settlement agreement and to confer with legal counsel.  Afterward, the committee reconvened in an open session and voted to approve the settlement agreement. Later the same day, the BOA also met in closed session to confer with legal counsel, and it too voted in an open session to approve the settlement agreement.

¶5      Pursuant to the settlement agreement, on October 1, 2021, the County issued a CUP to Camp Zion containing twenty-one conditions.   The settlement agreement explained "that construction and use of the project as proposed satisfies the requirements under the [z]oning [o]rdinance for the issuance of the requested [CUP]."  Further, the settlement agreement also stated that the County had "determined, based on the provisions of the [z]oning [o]rdinance and the standards set forth in [the] RLUIPA, the [Americans with Disabilities Act], [and] the constitutions and laws of the United States and the State of Wisconsin … that no variance under the [z]oning [o]rdinance is necessary in connection with the construction."

¶6      The Neighbors submitted an open records request and were provided a copy of the settlement agreement and the CUP on October 11, 2021.  Believing that the committee had issued the CUP, the Neighbors, on October 28, 2021, filed two administrative appeals to the BOA.  *See* DOOR COUNTY, WIS., COMPREHENSIVE ZONING ORDINANCE § 11.07 (May 23, 2023).[3]  The first appeal challenged the decision that a variance was not necessary, and the second appeal challenged the decision to issue the CUP to Camp Zion for the dining hall project.  On November 5, 2021, the County informed the Neighbors that the relevant decisions were made by the BOA, not the committee, and, therefore, the Neighbors' appeals had no basis.

¶7      The Neighbors then filed this case against the County on November 10, 2021.  The Neighbors alleged causes of action for a writ of mandamus, requesting that the circuit court "require the enforcement of the [zoning ordinance] which would require a variance to be obtained by Camp Zion"; certiorari review, pursuant to WIS. STAT. § 59.694(10) (2021-22),[4] of the BOA's determination that a variance was not required; and certiorari review of the BOA's issuance of the CUP pursuant to the settlement agreement.

¶8      The County filed a motion to dismiss the Neighbors' complaint, asserting several bases for dismissal.  As relevant here, the County argued that the Neighbors' claims for certiorari review were untimely under WIS. STAT.

---

[3] Although the events in this case occurred before May 23, 2023, the parties do not allege that any possible amendments to the zoning ordinance are relevant to the case.  Therefore, all references to the zoning ordinance in this decision are to the May 23, 2023 version.

[4] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

§ 59.694(10) and that the Neighbors' complaint was an improper collateral attack because the Neighbors failed to intervene in the federal lawsuit. After briefing, the circuit court denied the County's motion to dismiss in an oral ruling.

¶9      Thereafter, the Neighbors filed a motion seeking a writ of mandamus and reversal of the BOA's decision to issue the CUP. The Neighbors also requested that the circuit court "order the Door County Zoning Administrator to apply and enforce the [z]oning [o]rdinance and require a variance for the" dining hall project. The County opposed the motion on the grounds that the Neighbors failed to join Camp Zion as an indispensable party, that the decision whether a variance was required was a discretionary decision, and that the County properly issued the CUP to Camp Zion based on its statutory and inherent authority to settle lawsuits brought against it.

¶10     The circuit court held a nonevidentiary hearing on the Neighbors' motion. After allowing arguments from the parties, the court issued its oral ruling, granting the Neighbors' request to reverse the issuance of the CUP. The court later entered a written order requiring the County to "follow the law for any building applications, variance applications and/or [CUP] applications." The County appeals.

### DISCUSSION

¶11     On appeal from a circuit court decision in a certiorari action, we review the municipal body's decision, not that of the circuit court. *Oneida Seven Generations Corp. v. City of Green Bay*, 2015 WI 50, ¶42, 362 Wis. 2d 290, 865 N.W.2d 162. Further, our inquiry is limited to:

> (1) whether the municipality kept within its jurisdiction;
> (2) whether it proceeded on a correct theory of law;
> (3) whether its action was arbitrary, oppressive, or

> unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question.

*Ottman v. Town of Primrose*, 2011 WI 18, ¶35, 332 Wis. 2d 3, 796 N.W.2d 411. "The purpose of certiorari judicial review of municipal and administrative decisions is to ensure procedural due process." *Hartland Sportsmen's Club, Inc. v. City of Delafield*, 2020 WI App 44, ¶12, 393 Wis. 2d 496, 947 N.W.2d 214. Whether a municipal body "exceeded its statutory or constitutional authority is a question of law, which we review de novo." *See* *Hoepker v. City of Madison Plan Comm'n*, 209 Wis. 2d 633, 644, 563 N.W.2d 145 (1997).

¶12 The County argues that the circuit court erred by reversing the issuance of the CUP to Camp Zion for the following reasons: (1) the County acted lawfully by both settling the Camp Zion lawsuit and issuing the CUP; (2) Camp Zion was an indispensable party and should have been included in the case prior to the court issuing its decision; (3) the Neighbors' certiorari claims are time-barred; and (4) the Neighbors' claims are an improper collateral attack on the settlement agreement. For the reasons that follow, we reject the County's claims.

*I. Issuance of the CUP*

¶13 The County's predominate argument on appeal is that the circuit court erred by reversing the issuance of the CUP to Camp Zion because the County acted lawfully by both settling the Camp Zion lawsuit and issuing the CUP. In its oral decision, the court expressed concern with what it saw as the County's position that it could "just disregard the rules when [the County is] subject to a lawsuit, and just resolve that lawsuit in a way that the County believes is best, without any regard to the rules that it's required to follow outside of a lawsuit[.]" Given that the County had not presented any case law in support of its

position that "administrative rules … don't apply in the context of a settlement like this," the court determined that the BOA's grant of the CUP "was done contrary to the administrative procedures, and contrary to the ordinances and laws that apply to those types of decisions," which "substantially impacted the [Neighbors'] abilities to provide input or offer input, participate in the process, and for the system to sort of work the way that it was set up to work."

¶14     The County's position on appeal is that "the circuit court's decision was wrong as a matter of law, and it would make it effectively impossible for a governmental entity such as the County to settle a lawsuit such as that commenced by Camp Zion." The basis for the County's position is that it "is authorized by statute to 'sue and be sued' and 'to make such contracts and do such other acts as are necessary and proper to the exercise of the powers and privileges granted and the performance of legal duties charged upon it.'" *See* WIS. STAT. § 59.01; *see also* WIS. STAT. § 59.69(5e) (granting a county authority to issue a CUP); WIS. STAT. § 59.52(12)(a) (granting a county authority to "settle all accounts of the county and all claims, demands or causes of action against the county and issue county orders therefor"). The County further asserts "that the 'right to compromise and settle' litigation is incident to the power to sue and be sued." *See Washburn County v. Thompson*, 99 Wis. 585, 594, 75 N.W. 309 (1898). According to the County, "[t]he power to compromise and settle claims necessarily encompasses the power to approve or reject a proposed settlement of litigation."

¶15     As our review is of the municipal body's decision, we agree with the circuit court that the County erred by failing to comply with the relevant statutes and administrative procedures when granting Camp Zion a CUP. Therefore, the court properly vacated the CUP and remanded this matter to the County to comply

with the appropriate procedures when considering Camp Zion's CUP application. As an initial matter, it appears that the County does not dispute that it failed to comply with the pertinent statutory and administrative requirements when it granted Camp Zion a CUP.[5] Thus, we will not further address the procedural steps required for approval of a CUP, except to note that the County failed to comply with both the state statutes and the zoning ordinance. *See generally* WIS. STAT. §§ 59.69(5e)(b), (c), 59.694(10); *see also* ZONING ORDINANCE §§ 11.04, 11.07.

¶16    As the circuit court also recognized, the County fails to cite any relevant legal authority allowing it to ignore procedural statutes and county zoning ordinances when settling a lawsuit. Neither the cases cited by the County nor WIS. STAT. § 59.52(12)(a) stand for that proposition. Instead, the County's arguments on appeal are based on a logical fallacy: because the County has the power to

---

[5] The County argues that it "followed the proper procedures in making the determination to settle the Camp Zion [l]awsuit." It asserts that both the committee and the BOA held public meetings to discuss the status of the Camp Zion lawsuit, and the committee and the BOA did not vote on approving the settlement agreement until each were in an open session. Thus, the County claims that "[f]ar from a secretive process designed to exclude the Neighbors or any other member of the public, the process by which the County undertook to discuss and approve the [s]ettlement [a]greement with Camp Zion was fully consistent with the process allowed under Wisconsin law for such settlement decisions."

While the County claims it followed the proper procedures for *settlement decisions*, it does not assert that it followed the proper procedure for *issuing a CUP*, and there is no evidence that "all requirements and conditions established by the [C]ounty relating to the conditional use [were] satisfied" and "supported by substantial evidence." *See* WIS. STAT. §§ 59.69(5e)(b), (c); 59.694(7), (10); ZONING ORDINANCE §§ 10.01(3)(e), 11.04(3), 11.07. At the very least, pursuant to the zoning ordinance, the committee is to have the sole authority as to the initial decision of whether to issue a CUP, not the BOA. ZONING ORDINANCE § 10.01(3)(e).

Further, the Neighbors assert that "the entirety of the [BOA's] discussion regarding a [CUP] in closed session is a violation of open meetings law" because "all of the 'analysis' that allegedly occurred regarding the CUP … occurred behind closed doors in closed session." In light of our decision affirming the circuit court's reversal of the CUP and remanding the matter to the County to follow the proper procedures, we need not address this claim further.

settle litigation, it may do so by violating the law. We disagree with that proposition. The general power to settle litigation is not so broad as to allow "contractual exemptions from zoning requirements." *See League of Residential Neighborhood Advocs. v. City of Los Angeles*, 498 F.3d 1052, 1057 (9th Cir. 2007) (rejecting city's argument that provision in city charter empowering city council "to approve or reject settlement of litigation that does not involve only the payment or receipt of money" would allow it to circumvent zoning procedures).

¶17 The County does not assert before this court that Camp Zion's dining hall project did not require a CUP. Indeed, based on the record, Camp Zion is classified as an institutional recreational camp under the zoning ordinance, and the portion of Camp Zion's land upon which it sought to build the dining hall project is zoned "Heartland-3.5 (HL3.5)." *See* ZONING ORDINANCE § 2.01. Pursuant to the zoning ordinance, institutional recreational camps are a use permitted only as a conditional use in HL3.5. ZONING ORDINANCE § 2.05(3)(a). Thus, Camp Zion undeniably required a CUP for its dining hall project, and the settlement agreement granted the required CUP without complying with the required statutory and zoning ordinance processes. The County has not identified for this court any provisions within these authorities permitting the County to waive the CUP procedures or circumvent them by contract when resolving lawsuits, and we have found none. Because the County did not comply with those statutory and zoning ordinance processes, we conclude the County failed to proceed according to the law by granting the CUP to Camp Zion.

¶18 Given our conclusion above, we are not persuaded by the County's remaining arguments that it was somehow authorized to issue the CUP as part of its settlement of the federal lawsuit. First, the cases the County cites do not support its position. In *Wolff v. Town of Jamestown*, 229 Wis. 2d 738, 601

N.W.2d 301 (Ct. App. 1999), the Town of Jamestown appealed the circuit court's order denying its motion to intervene in litigation between Grant County and Clark and Linda Wolff based on the denial of a CUP. *Id.* at 740. We determined that the town had met the requirements of the statute entitling it to intervene as of right. *Id.* We explained that "the County must defend a suit for damages for the violation of the Wolffs' constitutional rights," and, as a result, "the potential for such damages provides the County with an incentive to settle the suit on terms more favorable to the Wolffs than the [t]own would accept." *Id.* at 748. Accordingly, we concluded that the town had the right to intervene because it "may be in a position to defend the board's decision more vigorously than the [c]ounty itself." *Id.* at 749.

¶19 In *Magnolia Township v. Town of Magnolia*, 2005 WI App 119, ¶1, 284 Wis. 2d 361, 701 N.W.2d 60, this court addressed whether a board of adjustment and the Town of Magnolia "lacked the authority to grant a [CUP] after the [t]own [b]oard had decided to deny it." During that case, the landowners had submitted a proposed settlement agreement that the town ultimately accepted, and the town board of appeals voted to grant the CUP based on the settlement agreement. *Id.*, ¶4. Neighboring property owners brought a certiorari action challenging that decision, and this court determined that the power to grant the CUP could not be delegated to the board of appeals and reversed the decision. *Id.*, ¶¶5, 36.

¶20 The County argues that these cases show the authority of the County to settle lawsuits by granting a CUP. However, neither *Wolff* nor *Magnolia* is factually similar to the circumstances in this case. As the County readily admits, "[i]n *Wolff*, neither the parties nor the court of appeals questioned the county's authority to settle the landowners' lawsuit by granting a [CUP]." Because that

issue was not addressed in *Wolff*, that case does not resolve the question before us. Further, the question before this court is not the delegation of certain powers within a municipal body, as in *Magnolia*.

¶21    Second, the County claims that

> [b]ecause the federal court could have ordered any remedy up to and including ordering the County to issue a [CUP] to Camp Zion or otherwise ordering the County to permit Camp Zion to proceed with construction, the County was likewise permitted to settle the Camp Zion [l]awsuit by agreeing to similar terms.

The County does not cite any legal authority in support of this proposition. We need not consider arguments that are unsupported by references to legal authority. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). Regardless, we do not agree with the County's general proposition.

¶22    Federal courts have recognized that "[a] federal consent decree or settlement agreement cannot be a means for state officials to evade state law." *See Neighborhood Advocs.*, 498 F.3d at 1055; *Perkins v. City of Chicago Heights*, 47 F.3d 212, 216 (7th Cir. 1995). As the Ninth Circuit Court of Appeals observed, however, a municipality "might not have to comply with the procedural and substantive limitations set forth in its zoning ordinances if there has been a violation of federal law or if compliance will result in such a violation." *Neighborhood Advocs.*, 498 F.3d at 1057-58 (citing *Perkins*, 47 F.3d at 216).

¶23    Similar to the facts in this case, in *Neighborhood Advocates*, an Orthodox Jewish congregation applied for a CUP to operate a synagogue in an area zoned residential. *Id.* at 1053. The neighbors objected, and the City of Los Angeles denied the application. *Id.* The congregation filed a federal lawsuit, alleging violations of federal and state constitutional rights. *Id.* While the lawsuit

was pending, the United States Congress passed the RLUIPA. *Id.* As a result, based on "[c]oncern[] about the force of this new federal law and seeking to avoid further litigation, the [c]ity entered into a settlement agreement that allowed the [c]ongregation to operate the synagogue under certain conditions." *Id.* The neighbors subsequently brought a federal lawsuit, alleging that the settlement agreement was void because granting the CUP violated state law and their right to due process. *Id.*

¶24 Ultimately, the Ninth Circuit determined that "[a] settlement agreement cannot override state law absent a specific determination that federal law has been or will be violated," and "[s]ince no such findings were made," the settlement agreement was "invalid and unenforceable." *Id.* According to the court, "[b]efore approving any settlement agreement that authorizes a state or municipal entity to disregard its own statutes in the name of federal law, a district court must find that there has been or will be an *actual* violation of that federal law." *Id.* at 1058. Absent that finding, the district court could not approve the settlement agreement authorizing the city to disregard its own zoning ordinances. *Id.*; *see also* **Perkins**, 47 F.3d at 216 ("Without [findings that a remedy is necessary to rectify a violation of federal law], parties can only agree to that which they have the power to do outside of litigation.").

¶25 We find *Neighborhood Advocates*' reasoning persuasive. In this case, neither the federal district court nor a jury made findings that federal or constitutional law had been violated by the County's denial of the variance. Additionally, like in **Neighborhood Advocates**, the settlement agreement specifically included a provision disclaiming any admission of the County's liability as to Camp Zion's causes of action. *See Neighborhood Advocs.*, 498 F.3d at 1058. Thus, while the County asserts that the federal court could have ordered

the CUP as a remedy, the federal court could not have done so without first determining that the County violated federal law. Given that no such findings were made in the Camp Zion lawsuit, the County had no authority to disregard its zoning regulations.

¶26 Next, the County argues that the issuance of the CUP "as part of the settlement process was not arbitrary or contrary to law even though the County did not shepherd Camp Zion's permit application through each procedural phase provided under the [z]oning [o]rdinance that would otherwise apply to [CUP] applications generally." Based on Camp Zion agreeing to change the location of the dining hall project, the County argues that the settlement agreement "represented the County's reasoned judgment that, under applicable law and based on the evidence submitted by Camp Zion, a [CUP] should be issued in response to the revised site plan and all of the related, supporting submissions (both in 2020 and 2021) by the Camp."

¶27 The County's assertions on this point are unsupported. The County has not identified any evidence in the record by which we could determine "whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment" or "whether the evidence was such that it might reasonably make the order or determination in question." *See Ottman*, 332 Wis. 2d 3, ¶35.

¶28 Finally, the County asserts that the result of the circuit court's decision, and now the conclusion of this court, is that the County will be "required to conduct a parallel administrative review" while other litigation is pending, which "[n]either Wisconsin law nor common sense supports." The County, however, has not identified any Wisconsin law prohibiting the conclusion reached

in this case. In fact, the plain language of the law concerning CUPs mandates that municipalities follow the proper procedures. Federal litigation cannot operate as an end run around local zoning ordinances. As the Seventh Circuit Court of Appeals stated,

> "[S]ome rules of law are designed to limit the authority of public officeholders, to make them return to other branches of government or to the voters for permission to engage in certain acts. They may chafe at these restraints and seek to evade them," but they may not do so by agreeing to do something state law forbids.

*Perkins*, 47 F.3d at 216 (citation omitted). In other words, "the pendency of litigation is not a blank check for a [municipality] when it comes to the rights of its residents." *Neighborhood Advocs.*, 498 F.3d at 1053.

## II. Failure to join Camp Zion as an indispensable party

¶29 Next, the County claims that Camp Zion is a necessary party to this action under WIS. STAT. § 803.03(1)(b)1.; therefore, the circuit court erred by not including Camp Zion prior to issuing its decision. Section 803.03(1)(b) provides that a person "shall be joined as a party" if "[t]he person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may:" (1) "[a]s a practical matter impair or impede the person's ability to protect that interest"; or (2) "[l]eave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his or her claimed interest."

¶30 If a circuit court determines that a party is a "necessary" party for one of the reasons set forth in WIS. STAT. § 803.03(1), then the court "shall order that the person be made a party," and if the person "cannot be made a party, the court shall determine whether in equity and good conscience the action should

proceed among the parties before it, or should be dismissed."  Sec. 803.03(3); *see also **Dairyland Greyhound Park, Inc. v. McCallum***, 2002 WI App 259, ¶9, 258 Wis. 2d 210, 655 N.W.2d 474.  The application of the statutes governing indispensable parties to undisputed facts is a question of law, which we review de novo.  ***Dairyland***, 258 Wis. 2d 210, ¶10.

¶31  Here, the County argues that because Camp Zion "had an interest in the [CUP], it was a necessary party pursuant to WIS. STAT. § 803.03(1)(b)1."  According to the County, Camp Zion "was excluded from defending any interest that it holds in the permit," and, therefore, "the circuit court lacked the ability to grant the requested relief, because it impaired Camp Zion's ability to protect its interests."

¶32  Whether a party is a necessary party under WIS. STAT. § 803.03(1)(b)1. "is in all significant respects the same inquiry" as whether a party is entitled to intervene in an action as a matter of right under WIS. STAT. § 803.09(1).  ***Helgeland v. Wisconsin Muns.***, 2008 WI 9, ¶131, 307 Wis. 2d 1, 745 N.W.2d 1 (citation omitted).  "If a person has no right of intervention under … § 803.09(1), the courts have no duty to join that person sua sponte as a necessary party under … § 803.03(1)(b)1."  ***Helgeland***, 307 Wis. 2d 1, ¶137.  To intervene as a matter of right under § 803.09(1), a movant must satisfy these four criteria:  (1) "the movant's motion to intervene is timely;" (2) "the movant claims an interest sufficiently related to the subject of the action;" (3) "disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest;" and (4) "the existing parties do not adequately represent the movant's interest."  ***Helgeland***, 307 Wis. 2d 1, ¶38.  "Courts have no precise formula for determining whether a potential intervenor meets the requirements of

§ 803.09(1)," but "[t]he analysis is holistic, flexible, and highly fact-specific." *Helgeland*, 307 Wis. 2d 1, ¶40 (footnote omitted).

¶33 The Neighbors explain that they "do not dispute that Camp Zion would be able to satisfy the low burden of the first and second elements" for intervention, but they argue that "the facts surrounding this case and the actions of Camp Zion itself do not support a finding under the third and fourth elements." Regarding the fourth element, the Neighbors assert that the County presented no evidence that it could not adequately represent Camp Zion's interest in this matter.

¶34 We agree with the Neighbors that Camp Zion is not a necessary party in the current dispute because, pursuant to element four, the County's and Camp Zion's interests are aligned.[6] Our supreme court explained in *Helgeland* that "[i]f a movant's interest is identical to that of one of the parties, or if a party is charged by law with representing the movant's interest, a compelling showing should be required to demonstrate that the representation is not adequate." *Id.*, ¶86. Further, "adequate representation is ordinarily presumed when a movant and an existing party have the same ultimate objective in the action," and "when the putative representative is a governmental body or officer charged by law with representing the interests of the absentee, a presumption of adequate representation arises whether the would-be intervenor is a citizen or subdivision of the governmental entity." *Id.*, ¶¶89-91.

---

[6] The County cites *Rainbow Springs Golf Co. v. Town of Mukwonago*, 2005 WI App 163, ¶11, 284 Wis. 2d 519, 702 N.W.2d 40, for the proposition that a property owner has a legal interest in a CUP. The Neighbors, however, argue that the "the holding of the case states the opposite, a CUP is a zoning designation and not a property interest." *See id.*, ¶12. Regardless, we do not dispute that Camp Zion has an interest in the CUP; the question is whether that interest is adequately represented.

¶35    In this case, both the County and Camp Zion have the same objective:  upholding the validity of the settlement agreement as well as the CUP.  Thus, Camp Zion's interest aligns with the County as to the outcome of this lawsuit.  Further, we presume that the County's representation of Camp Zion's interest is adequate because the County is a governmental body, and the County is statutorily required to defend its decision pursuant to certiorari review.  *See* WIS. STAT. § 59.694(10).  As the Neighbors note, there is no evidence of collusion, that the County is failing in its duty, or that its "interests are averse to Camp Zion." We also agree with the Neighbors that the scope of review on certiorari—which is "limited to the record presented to the tribunal whose decision is under review," *Sills v. Walworth Cnty. Land Mgmt. Comm.*, 2002 WI App 111, ¶36, 254 Wis. 2d 538, 648 N.W.2d 878—limits the need to involve Camp Zion at this juncture because "[t]his is not a case regarding the dispute of substantial evidence or testimony presented."  In summary, Camp Zion's interest is aligned with the County; therefore, there is no requirement that the circuit court should have joined Camp Zion as a party to this action.[7]

## III.  *Certiorari review was not timely filed*

¶36    The County's next argument is that the Neighbors' two certiorari review claims were untimely and that the circuit court erred by refusing to dismiss the claims on that basis.  In this case, the settlement agreement, providing for the issuance of the CUP without a variance, was approved on September 30, 2021.

---

[7] The County also asserts that the circuit court improperly shifted the duty to join the indispensable party onto the County.  As we determine that there is no requirement that Camp Zion be joined as a party in this case, whether the court improperly shifted the duty is irrelevant.  We will not address this issue further.

The CUP was dated and filed on October 1, 2021. The Neighbors requested, and were provided, a copy of the CUP on October 11, 2021. On October 28, 2021, the Neighbors filed two administrative appeals under the zoning ordinance with the BOA, which they were told, on November 5, 2021, had no basis. Thereafter, on November 10, 2021, the Neighbors filed this case—forty days after the decision issuing the CUP.

¶37    Pursuant to WIS. STAT. § 59.694(10), a claim for certiorari review must be commenced "within 30 days after the filing of the decision in the office of the board." "Whether a request for certiorari review is timely is a question of law we review de novo." *Fassett v. City of Brookfield*, 2022 WI App 22, ¶10, 402 Wis. 2d 265, 975 N.W.2d 300. Our supreme court has recognized, however, that "a party may be estopped by fraud, or other wrongful conduct, from asserting the statute of limitations as a defense."[8] *Peters v. Kell*, 12 Wis. 2d 32, 45-46, 106 N.W.2d 407 (1960). "[T]he test of whether a party should be estopped from asserting the statute of limitations [is] 'whether the conduct and representations of [the] appellant were so unfair and misleading as to outbalance the public's interest in setting a limitation on bringing actions.'" *Hester v. Williams*, 117 Wis. 2d 634, 645, 345 N.W.2d 426 (1984) (citation omitted). "Whether to apply estoppel to preclude a party from raising a defense is within the [circuit] court's discretion." *Culbert v. Ciresi*, 2003 WI App 158, ¶15, 266 Wis. 2d 189, 667 N.W.2d 825.

---

[8] "Equitable estoppel has four elements: '(1) action or non-action, (2) on the part of one against whom estoppel is asserted, (3) which induces reasonable reliance thereon by the other, either in action or non-action, and (4) which is to his or her detriment.'" *Nugent v. Slaght*, 2001 WI App 282, ¶29, 249 Wis. 2d 220, 638 N.W.2d 594 (citation omitted).

¶38     The circuit court, relying on *Hester*, concluded that the County was estopped from asserting the statute of limitations as a defense. According to the court, the County's "actions were contrary to normal practices and statutory requirements. By making the challenge[d] decisions in closed sessions, the defendants misled the [Neighbors] on actions that affected [their] interests." The Neighbors do not appear to dispute that their petition for certiorari review was untimely under WIS. STAT. § 59.694(10).[9] They argue, however, that the court correctly determined that equitable estoppel applies in this case, given the County's failure to abide by state statutes, the zoning ordinance, and case law.

¶39     We agree that the circuit court did not erroneously exercise its discretion by applying equitable estoppel to bar the County from asserting a defense based on WIS. STAT. § 59.694(10)'s thirty-day limitation. In *Hester*, the court reiterated six estoppel factors to consider:

> (1) The doctrine may be applied to preclude a defendant who has been guilty of fraudulent or inequitable conduct from asserting the statute of limitations;
>
> (2) The aggrieved party must have failed to commence an action within the statutory period because of his or her reliance on the defendant's representations or act;
>
> (3) The acts, promises or representations must have occurred before the expiration of the limitation period;
>
> (4) After the inducement for delay has ceased to operate, the aggrieved party may not unreasonably delay;

---

[9] Instead, the Neighbors suggest, as an alternative, that we should begin counting the number of days once "the Neighbors received the fully executed [s]ettlement [a]greement along with the [CUP] on October 11, 2021," meaning that the Neighbors' complaint was filed within the statutory time limit. However, WIS. STAT. § 59.694(10) clearly states that the counting begins "after the filing of the decision in the office of the board," not when the Neighbors receive the decision.

(5) Affirmative conduct of the defendant may be equivalent to a representation upon which the plaintiff may rely to his or her disadvantage; and

(6) Actual fraud, in a technical sense, is not required.

*Hester*, 117 Wis. 2d at 644-45. Under the circumstances of this case, all these factors have been met.

¶40 As already discussed, it is undisputed that the County acted outside of the law when it determined that Camp Zion did not need a setback variance and granted the CUP. *See supra* ¶15 & note 5. That fact, in and of itself, is sufficient to constitute unfair and inequitable conduct. The Neighbors had no notice that the County was considering whether to grant Camp Zion the CUP because the County failed to follow the proper procedures. *See* WIS. STAT. § 59.69(5e)(c). Then, the meetings to discuss the settlement agreement were held in closed session— purportedly because the meetings included discussions with legal counsel about the Camp Zion lawsuit legal strategy. We observe that this approach is particularly problematic if all that was discussed during the open session was the approval of the settlement agreement and neither the variance nor the CUP were discussed in detail. Based on the record before us, aside from the minutes of those meetings, there does not appear to be any other record of what was discussed by the committee and the BOA at those meetings. Moreover, the minutes do not demonstrate whether the variance or the CUP, as opposed to just the settlement agreement, were specifically discussed during the open sessions.

¶41 In response, the County argues that "[a]t least one of the Neighbors was present at the [committee's] duly noticed public meeting" on September 30, 2021. The County does not explain what it means by "duly noticed," but it cites the "Notice of Public Meeting" in the record, which lists the following as an

agenda item: "[c]onfer[] with legal counsel for the governmental body" regarding the Camp Zion lawsuit and the "application of the RLUIPA to land use regulations and zoning approvals [including a CUP] for a religious Institutional Recreation Camp." (First and third alterations in original.) Regardless, the County does not assert that the notice complied with WIS. STAT. § 59.69(5e)(c), WIS. STAT. ch. 985, or ZONING ORDINANCE § 11.09. Furthermore, we question whether this description would alert citizens that the County would be voting *to approve* the Camp Zion CUP at that meeting. We are also not persuaded that one individual's vigilance in attending the meeting would somehow erase the County's misleading conduct.

¶42 Furthermore, once the Neighbors received the CUP, they faced even more questions. It was unclear from both the settlement agreement and the CUP what County governmental entity issued the CUP, which then rendered the appeal procedures obscure.[10] The County asserts that the CUP clearly stated that the provisions of WIS. STAT. § 59.694(10) applied to the decision. We are not convinced, however, that the inclusion of § 59.694(10) within the CUP did not cause more confusion. The committee is the County entity that is to make CUP determinations, *see* ZONING ORDINANCE §§ 10.01(3)(e), 11.04; *see also* WIS. STAT. § 59.694(7), but appeals of those decisions are made to the BOA, not by certiorari, *see* ZONING ORDINANCE § 11.07; *see also* ***Nodell Inv. Corp. v. Glendale***, 78 Wis. 2d 416, 427, 254 N.W.2d 310 (1977) ("In the absence of such administrative action [i.e., appeal to the board of appeals], the petitioner's

---

[10] Pursuant to the settlement agreement: "Upon the filing of the Stipulation of Dismissal by the Parties …, *the County* shall immediately issue to [Camp Zion] a [CUP] … for the construction and use of the Center and Property consistent with the Site Plan … and the other supporting materials submitted by the Camp to the County." (Emphasis added.)

grievances *which might have been correctable by the board*, cannot be brought before a court." (alteration in original; citation omitted)). Consequently, as the circuit court explained, the Neighbors "attempted to protect their interest[s] by exhausting their administrative remedies [via appeals to the BOA], only to be told that the permit was in fact issued by the [BOA]." Thereafter, the Neighbors did not delay in filing their petition for certiorari review.

¶43    In summary, we agree with the circuit court that the County's "actions were contrary to normal practices and statutory requirements," which the Neighbors "were entitled to rely on … to protect their interest[s], and they acted diligently to protect those interests by actively seeking information on the Camp Zion project and filing appeals with the [BOA] and the [c]ourt." Further, as the court explained, "[t]he alternative would be to leave [the Neighbors] with no recourse to challenge avoidable actions by the [County], and award the [County] for [its] alleged failures to follow statutorily-required procedures." Thus, the court did not err by refusing to dismiss this case as time-barred.

## IV. *Improper collateral attack*

¶44    Finally, the County argues that the circuit court erred by concluding that the Neighbors' claims in this case were not an improper collateral attack on the settlement agreement. As noted above, the County moved to dismiss the Neighbors' claims, in part, on the basis that the Neighbors should have intervened in the Camp Zion lawsuit to challenge the settlement agreement. The County asserts that "[w]ith this lawsuit, the Neighbors have executed an end run around [Camp Zion's] previous lawsuit against the County, a maneuver that is disfavored under the law."

¶45 We conclude that the circuit court did not err by denying the County's motion to dismiss on the basis that the Neighbors should have intervened in the Camp Zion lawsuit.[11] Notably, the County cites no authority entitling it to dismissal of the Neighbors' suit on this basis, and, overall, the County's arguments on appeal as to this issue are conclusory, without sufficient legal basis, and underdeveloped. *See Papa v. DHS*, 2020 WI 66, ¶42 n.15, 393 Wis. 2d 1, 946 N.W.2d 17 (declining to address an underdeveloped argument).

¶46 First, the County argues that the "[circuit] court conducted a cursory analysis of this issue and ruled that the Neighbors did not meet the requirements for intervention set forth in [FED. R. CIV. P.] 24(a)(2)"[12] because the Neighbors and the County were "aligned in their interest to defend that decision." However, the County does not develop an argument as to why the court erred by determining that the Neighbors did not meet the requirements for intervention. We note only that in the Camp Zion lawsuit, the County sought to uphold its decision denying the variance, and, under those circumstances, the Neighbors' and the County's interests would have been aligned.

¶47 In addition, during the pendency of the federal lawsuit, the Neighbors would not have been aware that the County may have decided to no

---

[11] The question of whether this certiorari action is a collateral attack on the Camp Zion lawsuit settlement agreement involves the application and interpretation of the law and is, therefore, a question of law. We review questions of law de novo. *See Pietrowski v. Dufrane*, 2001 WI App 175, ¶5, 247 Wis. 2d 232, 634 N.W.2d 109 ("We review the legal issues de novo.").

[12] Pursuant to FED. R. CIV. P. 24(a)(2), a party must satisfy the following requirements to intervene in a federal lawsuit: "(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action." *Illinois v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019) (citation omitted).

longer require a variance for the dining hall project and to issue a CUP without complying with state statutes and local zoning ordinances. As discussed above, *see supra* ¶¶15-28, the County was not entitled to take the action it did in the manner it did within the settlement agreement. Thus, the Neighbors would not have understood the need to intervene in the lawsuit to protect their rights. Accordingly, the County's assertion that the Neighbors were required to "move promptly to intervene as soon as [they] kn[ew] or ha[d] reason to know that [their] interests might be adversely affected by the outcome of the litigation" is not well taken. *See Heartwood, Inc. v. United States Forest Serv.*, 316 F.3d 694, 701 (7th Cir. 2003). We agree with the Neighbors that "[a]lthough a similar set of facts set the background for both lawsuits, the legal rights that the Neighbors are attempting to enforce in this lawsuit were not ripe … when the Camp Zion [l]awsuit started because those decisions and events had not happened yet."

¶48 Finally, we also agree with the Neighbors that by this lawsuit, the Neighbors are properly challenging a decision of the County under the law. As the Neighbors explain, they "are in fact not using an 'end run' or 'improper collateral attack' as the County has suggested, but instead have stated a claim to seek their *exclusive* remedy."[13] WISCONSIN STAT. § 59.694(10) provides the exclusive method for challenging a decision by a board of adjustment. The Neighbors' challenge here is to the County's decision to issue a CUP to Camp Zion without complying with the pertinent law. Because that decision was

---

[13] The County cites several cases from other jurisdictions in support of its position that the Neighbors are executing an "end run" around the Camp Zion lawsuit that is disfavored in the law. However, the County fails to develop an argument regarding application of those cases to the circumstances here. We need not address undeveloped arguments. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

made by the BOA, it must be reviewed by the circuit court pursuant to § 59.694(10). The court did not err by concluding that the Neighbors' claims in this case were not an improper collateral attack on the settlement agreement.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* Wis. Stat. Rule 809.23(1)(b)5.